**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

In re:

THOMAS DAVID HART and
JANE ELIZABETH HART,

Debtors.
_______________________________________/

Case No.: 25-58307-jwc

Chapter 11

SOUTHSTATE BANK, N.A.,

Plaintiff,

Adv. Pro. No. ____________________

v.

THOMAS DAVID HART and
JANE ELIZABETH HART,

Defendants.
_______________________________________/

# COMPLAINT

SouthState Bank, N.A. ("SouthState"), by and through undersigned counsel, sues the Debtors, Thomas David Hart and Jane Elizabeth Hart, pursuant to pursuant to 11 U.S.C. § 105, Federal Rule of Bankruptcy Procedure 7001, and 28 U.S.C. § 2201 for equitable reformation of a deed to secure debt and for a declaratory judgment to determine the validity, priority, and extent of a lien in property of the estate and in support states:

## Jurisdiction and Venue

1. This is a Complaint filed pursuant to 11 U.S.C. § 105 and 28 U.S.C. § 2201 to determine the validity, priority, and extent of a lien in property of the estate and for a declaratory judgment.

2. This Court has jurisdiction over the parties and the subject matter pursuant to 11 U.S.C. §§ 101 *et seq*., 28 U.S.C. §§ 1334, 157(a) and 157(b), and the standing order of reference entered by the District Court.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

**Parties**

5. Plaintiff SouthState is a national banking association, with its principal place of business located at 1101 First St. South, Winter Haven, Florida 33880 and is the successor by merger to CenterState Bank, N.A., which was the successor by merger to CharterBank, which in turn was the successor by merger to Resurgens Bank, the original grantee of the deed to secure debt at issue in this action.

6. The Defendant and Debtor, Thomas David Hart ("Mr. Hart"), is a resident of Cherokee County, Georgia.

7. The Defendant and Debtor, Jane Elizabeth Hart, ("Mrs. Hart"), is a resident of Cherokee County, Georgia.

**Factual Allegations**

8. On or about August 4, 2016, Pizza Bakers on Ponce, Inc. executed and delivered to Resurgens Bank ("Resurgens") that certain U.S. Small Business Administration Note in the principal amount of $1,581,600.00, as amended by that certain Agreement to Modify Promissory Note dated January 6, 2017, as amended by that certain Second Agreement to Modify Promissory Note dated March 21, 2017, as amended by that certain Third Agreement to Modify Promissory Note and Related Loan Documents dated May 25, 2018, as amended and/or modified by that certain Loan Modification Agreement dated January 27, 2020 (collectively, the "Note") relating

to the "Loan." A true and correct copy of the Note is attached hereto and incorporated by reference herein as **Exhibit A**.

9. The full and punctual payment of all amounts owed under the Note is absolutely and unconditionally guaranteed by Mr. Hart pursuant to that certain U.S. Small Business Administration Unconditional Guarantee, as amended from time to time, which Mr. Hart executed and delivered to Resurgens on or about August 4, 2016, as reaffirmed by that certain Guarantor's Acknowledgment and Consent dated January 6, 2017, as further reaffirmed by that certain Guarantor's Acknowledgement and Consent dated May 25, 2018 (collectively, the "Mr. Hart Guarantees"). True and correct copies of the Mr. Hart Guarantees are attached hereto and incorporated by reference herein as **Composite Exhibit B**.

10. Additionally, the full and punctual payment of all amounts owed under the Note is absolutely and unconditionally guaranteed by Mrs. Hart pursuant to that certain U.S. Small Business Administration Unconditional Guarantee, as amended from time to time, which Mrs. Hart executed and delivered to Resurgens on or about August 4, 2016, as reaffirmed by that certain Guarantor's Acknowledgment and Consent dated January 6, 2017, as further reaffirmed by that certain Guarantor's Acknowledgement and Consent dated June 2, 2018 (collectively, the "Mrs. Hart Guarantees" and together with the Mr. Hart Guarantees, the "Guarantees"). True and correct copies of the Mrs. Hart Guarantees are attached hereto and incorporated by reference herein as **Composite Exhibit C**.

11. To secure payment of the Note and Guarantees, Mr. Hart and Mrs. Hart executed and delivered to Resurgens a Residential Deed to Secure Debt (the "Prior Deed to Secure Debt") dated August 4, 2016 and recorded with the Clerk of Superior Court, Fulton County at Deed Book 56485, Page 526, a copy of which is attached as **Exhibit D.**

12. The Prior Deed to Secure Debt encumbered Mr. and Mrs. Hart's home located at 14740 Taylor Valley Way, Milton, Georgia 30004 (the "Prior Home") and was signed by both Mr. and Mrs. Hart.

13. On September 2, 2017, Resurgens merged with and became a part of CharterBank.

14. On September 1, 2018, CharterBank merged with and became a part of CenterState Bank, N. A.

15. On June 8, 2020, CenterState Bank, N. A. changed its name to South State Bank, N. A. and on November 5, 2021, South State Bank, N.A. changed its name to SouthState Bank, N.A.

16. In 2022, Mr. and Mrs. Hart decided to sell their Prior Home and purchase a home located at 2101 Gaddis Road, Canton, Georgia 30115 (the "Current Home").

17. Since the Debtors' Prior Home encumbered by the Prior Deed to Secure Debt was being sold, SouthState agreed to take a deed to secure debt on the Current Home.

18. On November 30, 2022, Mrs. Hart executed a Deed to Secure Debt which was recorded in Deed Book 14840, Page 1394 by the Clerk of Superior Court, Cherokee County (the "Security Deed"), pursuant to which the parties intended that SouthState be granted a second priority security interest in and lien upon the Current Home to secure the repayment of the Note guaranteed by Mr. Hart and Mrs. Hart. A true and correct copy of the Security Deed is attached hereto and incorporated by reference herein as **Exhibit E**.

19. On November 30, 2022, the Current Home was and currently remains owned by Mr. Hart and Mrs. Hart as joint tenants with right of survivorship, pursuant to a Warranty Deed recorded on November 22, 2022 in Deed Book 14838, Page 618 by the Clerk of Superior Court,

Cherokee County. A true and correct copy of the Warranty Deed is attached hereto and incorporated herein as **Exhibit F**.

20. Both Mr. Hart and Mrs. Hart should have been named as "grantors" in the Security Deed, not Mrs. Hart alone.

21. The failure to include Mr. Hart in the Security Deed is the result of a mutual mistake that was unknown to and/or inadvertently overlooked by the parties at the time that the Security Deed was signed.

22. Mr. Hart, Mrs. Hart, and SouthState intended for the Security Deed to be given to SouthState by both Mr. Hart and Mrs. Hart, rather than Mrs. Hart alone.

23. The Loan was given to Pizza Bakers, which was owned by Mr. Hart, and the same is personally guaranteed by both Mr. Hart and Mrs. Hart.

24. As a result of the mergers described above, SouthState is the owner and holder of the Note, the Guarantees, and the Security Deed, as well as any and all other documents relating to or evidencing the Loan (collectively, the "Loan Documents").

25. SouthState has standing to enforce the terms of the Loan Documents.

26. Defendants defaulted under the terms of the Loan Documents by failing to timely make the required monthly payments when due.

27. Due to Defendants' defaults, SouthState filed a complaint in Cherokee County Superior Court (the "State Court") on January 16, 2025 for money judgment against Pizza Bakers and Defendants, as civil action file number 25CVE0073.

28. On May 5, 2025, the State Court entered a final judgment finding Defendants jointly and severally liable for all amounts due under the Loan Documents, totaling $1,098,740.40

("Final Judgment"). A true and correct copy of the Final Judgment is attached hereto and incorporated by reference herein as **Exhibit G**.

29. After obtaining the Final Judgment, SouthState began making plans to foreclose on the Current Home as authorized by the Security Deed. Upon conducting a title examination in preparation for foreclosure, however, SouthState discovered that Mrs. Hart alone was named grantor and Mr. Hart was inadvertently omitted.

30. Therefore, on June 25, 2025, SouthState filed a complaint for equitable and other relief in the State Court seeking equitable reformation of the Security Deed and a declaratory judgment which was designated Civil Action 25CVE1284 (the "Deed Reformation Action").

31. The Deed Reformation Action was stayed by the Defendants' filing of their voluntary bankruptcy petition on July 25, 2025.

32. On May 6, 2026, the Defendants/Debtors filed their proposed Chapter 11 Plan (ECF 54) which provides for sale of the Current Home and payment to SouthState from the sales proceeds.

33. However, the proposed Chapter 11 Plan only provides for payment from Mrs. Hart's undivided one-half interest in the Current Home in the total amount of $205,879.29 and does not provide for any payment for the Loan from Mr. Hart's one-half interest in the Current Home.

34. All conditions precedent to filing this action have been performed, waived, satisfied, or have occurred.

**COUNT I: EQUITABLE REFORMATION OF DEED**

35. SouthState re-alleges and incorporates by reference paragraphs 1 through 34 above as if fully set forth herein.

36. This is an action for equitable reformation of the Security Deed.

37. Due to the mutual mistake in the Security Deed, the real estate records do not accurately reflect the parties' intentions with respect to the Current Home.

38. Due to mutual mistake, Mrs. Hart alone executed the Security Deed and Mr. Hart did not join as a grantor.

39. Accordingly, the Security Deed does not reflect the parties' respective interests and intentions with respect to the Current Home.

40. The mistake in omitting Mr. Hart from the Security Deed is relievable in equity because it is the result of a mutual error or oversight that prevented the Security Deed from reflecting the true agreement between the parties regarding the Loan and SouthState's security interest in the Current Home.

41. SouthState has no adequate remedy at law to cure the misidentification of the grantor in the Security Deed.

42. Without a reformation of the Security Deed, Mrs. Hart and Mr. Hart will have been unjustly enriched at the expense of SouthState, because Mr. Hart currently owns the Current Property free and clear of SouthState's security interest, yet he benefited from the $1,581,600.00 in Loan proceeds.

43. Pursuant to O.C.G.A. § 23-2-25, SouthState seeks relief in equity to reflect the intention of the parties by correcting the mutual mistake that has called the Security Deed's validity into question.

WHEREFORE, SouthState Bank, N.A. respectfully requests that this Court reform the Security Deed to reflect the parties' true intent by adding Thomas David Hart as a grantor *nunc*

*pro tunc* to November 30, 2022, the date of the execution of the Security Deed, and for such other relief as the Court deems just and proper.

**COUNT II: DECLARATORY JUDGMENT**

44. SouthState re-alleges and incorporates by reference paragraphs 1 through 34 above as if fully set forth herein.

45. This is an action to declare the validity, priority, and extent of SouthState's lien in the Current Home which is property of the bankruptcy estate.

46. The Current Home is a critical source of repayment for the Loan.

47. An actual and justiciable controversy has arisen and presently exists between SouthState on the one hand and the Defendants on the other hand with respect to the validity, priority, and extent of SouthState's lien on the Current Home based on the mutual mistake as to one of the grantor's names being omitted from the Security Deed.

48. A judicial declaration of the parties' relative rights, duties, and status in and with respect to the Current Home is necessary to settle and afford the parties relief from the uncertainty occasioned by this dispute.

49. SouthState lacks an adequate remedy at law because only a judicial determination can resolve the controversy regarding the extent of SouthState's lien on the Current Home.

WHEREFORE, SouthState Bank, N.A. requests that the Court enter a judgment determining and declaring the validity, extent, and priority of SouthState's lien on the Current Home and for such other relief as the Court deems just and proper.

Respectfully submitted this 13th day of May, 2026.

**AKERMAN LLP**

By: */s/ Jeremy P. Burnette*
Jeremy P. Burnette
Georgia Bar No. 142467
E-mail: Jeremy.burnette@akerman.com
999 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Telephone: (404) 733-9809
Facsimile: (404) 733-9909

*Attorneys for Plaintiff SouthState Bank, N.A.*

U.S. Small Business Administration

# NOTE

| | |
|---|---|
| SBA Loan # | [redacted]7050[redacted] |
| SBA Loan Name | Mellow Mushroom Pizza Bakers - Decatur |
| Date | August 4, 2016 |
| Loan Amount | 1,581,600.00 |
| Interest Rate | WSJ Prime Plus Two and One Half Percent Per Annum (P+2.50%) |
| Borrower | Pizza Bakers on Ponce, Inc. |
| Operating Company | N/A |
| Lender | Resurgens Bank |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of One Million Five Hundred Eighty One Thousand Six Hundred and 00/100 (1,561,000.00) Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



**Exhibit A**

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 5.75% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower Must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this note is dated and every month thereafter; payments must be made on the same date as the date of this Note in the months they are due.

Borrower must pay principal and interest payments of $ 17,560.00 every month, beginning seven months from the month this Note is dated; payments must be made on the first (1st) calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month (as published in the Wall Street Journal) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.50% above the Prime Rate. Lender will adjust the interest rate on the first calendar day each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of Borrower. Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:
Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years 6 months from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00%



**Exhibit A**

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;
B. Defaults on any other loan with Lender;
C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
G. Fails to pay any taxes when due;
H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I. Has a receiver or liquidator appointed for any part of their business or property;
J. Makes an assignment for the benefit of creditors;
K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;
B. Collect all amounts owing from any Borrower or Guarantor;
C. File suit and obtain judgment;
D. Take possession of any Collateral; or
E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C. Release anyone obligated to pay this Note;
D. Compromise, release, renew, extend or substitute any of the Collateral; and
E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.



**Exhibit A**

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.
B. Borrower waives all suretyship defenses.
C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
F. If any part of this Note is unenforceable, all other parts remain in effect.
G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.



**Exhibit A**

10. STATE-SPECIFIC PROVISIONS:

| |
|---|
| Time is of the essence of this Note. |

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

IN WITNESS WHEREOF, the authorized officer of Borrower, has executed this Note under seal this 1st day of June, 2016.

Pizza Bakers on Ponce, Inc., a Georgia corporation

By:______________________________
Thomas David Hart, CEO/President

(CORPORATE SEAL)

The guaranteed portion of this Note has been transferred to a registered holder for value

Date: 12/16/16

Resurgens Bank

______________________________
Leigh Milton, SVP SBA Lending



**Exhibit A**

# AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS

**THIS AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS** (the "Agreement") is entered into this 6th day of January, 2017 by and among **RESURGENS BANK** (the "Lender") and **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower").

## WITNESSETH:

WHEREAS, on August 4, 2016, Lender made a loan (the "Loan") to Borrower in the amount of $1,581,600.00, as evidenced by that certain Note of even date therewith in the amount of the Loan (the "Note"); and

WHEREAS, the Note and all other related Loan documents executed by Borrower in favor of Lender are collectively hereinafter referred to as the "Loan Documents"; and

WHEREAS, Borrower and Lender desire to modify the loan to change the interest rate adjustment period thereunder from monthly to every calendar quarter; and

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) in hand paid and the premises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agrees as follows:

1. The recitals contained hereinabove are incorporated herein as if fully set forth, and the terms and conditions of all documents executed in connection with the Loan Documents are incorporated herein by this reference.

2. The Note is hereby modified and amended as follows: The interest rate under the Note shall adjust every calendar quarter during the term hereof. The parties agree the next interest rate adjustment hereunder shall be April 1, 2017 and every calendar quarter thereafter.

3. Borrower acknowledges, agrees warrants that no default exists under the Note, the Loan or any of the Loan Documents. Except as amended and modified by this Agreement, all other terms and conditions of the Note and the other Loan Documents shall remain the same and shall remain in full force and effect. The parties hereto acknowledge and agree that the execution and delivery of this Agreement shall not effect a novation of the Note, or any other Loan Documents evidencing or securing same and shall not release any collateral or any obligations owed by Borrower to Lender.

4. Borrower hereby acknowledges that it does not have any claim of offset, defense, or cause of action of any nature against Lender which would impair or in any way reduce or diminish its liability to Lender. Borrower further represents and asserts that it has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan transaction that is the subject matter of this

**Exhibit A**

Agreement, including but not limited to, claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver of any terms and provisions of any documents executed or delivered in connection with the Note, the Loan Agreement or any of the Loan Documents and Borrower hereby releases any and all such defenses, claims, damages or defenses against Lender.

5. This Agreement shall inure to the benefit of the heirs, successors and assigns of the parties hereto and may be executed in multiple counterparts, each of which taken as a whole, shall constitute one and the same instrument. Portions of this Agreement deemed to be unenforceable shall be excised and the remaining provisions shall stand on their own. Time is of the essence of this Agreement and this Agreement shall be governed by the laws of the State of Georgia.

6. Borrower represents, warrants and certifies to Lender that they are in full compliance with all terms and conditions of the SBA Loan Authorization dated November 21, 2014, and all amendments thereto, and acknowledges, agrees and reaffirms all obligations imposed by the aforesaid SBA Loan Authorization and agree to be bound thereby and to comply with the terms thereof.

7 Borrower authorizes and directs Lender to take all actions necessary to conform the Loan Documents, including without limitation, the Note, to the terms as herein agreed and releases Lender, its officers, directors, employees and attorneys from any and all claims, actions, damages, and suits of any kind and nature arising out of or relating to the Loan or any Loan Documents for or in connection with this Agreement.

(SIGNATURES ON FOLLOWING PAGE)

**Exhibit A**

IN WITNESS WHEREOF, the parties hereto have signed, sealed and delivered this Agreement on the date first written above.

**LENDER:**

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public April 29, 2017

[NOTARY SEAL]

RESURGENS BANK

By: ______________________

Leigh Milton, Senior Vice President

(BANK SEAL)

**BORROWER:**

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public April 29, 2017

[NOTARY SEAL]

PIZZA BAKERS ON PONCE, INC., a Georgia corporation

By: ______________________

Thomas David Hart, CEO/President

(CORPORATE SEAL)

SEAL

**Exhibit A**

# SECOND AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS

**THIS SECOND AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS** (the "Agreement") is entered into this 21st day of March, 2017 by and among **RESURGENS BANK** (the "Lender") and **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower").

## WITNESSETH:

WHEREAS, on August 4, 2016, Lender made a loan (the "Loan") to Borrower in the amount of $1,581,600.00, as evidenced by that certain Note of even date therewith in the amount of the Loan, as amended by that certain Agreement to Modify Promissory Note dated January 6, 2017 (as amended, the "Note"); and

WHEREAS, the Note and all other related Loan documents executed by Borrower in favor of Lender are collectively hereinafter referred to as the "Loan Documents"; and

WHEREAS, Borrower requested and Lender agreed to modify the Note to extend the "interest only" period of the loan for an additional three (3) months;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) in hand paid and the premises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agrees as follows:

1. The recitals contained hereinabove are incorporated herein as if fully set forth, and the terms and conditions of all documents executed in connection with the Loan Documents are incorporated herein by this reference.

2. The Note is hereby modified and amended as follows:

   (a) Notwithstanding anything contained in the Note to the contrary, Borrower shall make interest only payments for the months of March, April and May of 2017. All payments shall be due and payable on the first (1st) calendar day of said month.

   (b) Commencing on June 1, 2017, Borrower shall make principal and interest payments in the amount of $18,161.35 and shall continue making principal and interest payments thereunder in accordance with the terms of the Note through and including the Maturity Date thereof.

3. Borrower acknowledges, agrees warrants that no default exists under the Note, the Loan or any of the Loan Documents. Except as amended and modified by this Agreement, all other terms and conditions of the Note and the other Loan Documents shall remain the same and shall remain in full force and effect. The parties hereto acknowledge and agree that the execution and delivery of this Agreement shall not effect a novation

of the Note, or any other Loan Documents evidencing or securing same and shall not release any collateral or any obligations owed by Borrower to Lender.

4. Borrower hereby acknowledges that it does not have any claim of offset, defense, or cause of action of any nature against Lender which would impair or in any way reduce or diminish its liability to Lender. Borrower further represents and asserts that it has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan transaction that is the subject matter of this Agreement, including but not limited to, claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver of any terms and provisions of any documents executed or delivered in connection with the Note, the Loan Agreement or any of the Loan Documents and Borrower hereby releases any and all such defenses, claims, damages or defenses against Lender.

5. This Agreement shall inure to the benefit of the heirs, successors and assigns of the parties hereto and may be executed in multiple counterparts, each of which taken as a whole, shall constitute one and the same instrument. Portions of this Agreement deemed to be unenforceable shall be excised and the remaining provisions shall stand on their own. Time is of the essence of this Agreement and this Agreement shall be governed by the laws of the State of Georgia.

6. Borrower represents, warrants and certifies to Lender that they are in full compliance with all terms and conditions of the SBA Loan Authorization dated November 21, 2014, and all amendments thereto, and acknowledges, agrees and reaffirms all obligations imposed by the aforesaid SBA Loan Authorization and agree to be bound thereby and to comply with the terms thereof.

7 Borrower authorizes and directs Lender to take all actions necessary to conform the Loan Documents, including without limitation, the Note, to the terms as herein agreed and releases Lender, its officers, directors, employees and attorneys from any and all claims, actions, damages, and suits of any kind and nature arising out of or relating to the Loan or any Loan Documents for or in connection with this Agreement.

(SIGNATURES ON FOLLOWING PAGE)

IN WITNESS WHEREOF, the parties hereto have signed, sealed and delivered this Agreement on the date first written above.

**LENDER:**

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public

April 29, 2021

[NOTARY SEAL]

RESURGENS BANK

By: ______________________
Leigh Milton, Senior Vice President

[BANK SEAL]

**BORROWER:**

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public

April 29 2021

[NOTARY SEAL]

PIZZA BAKERS ON PONCE, INC., a Georgia corporation

By: ______________________
Thomas David Hart, CEO/President

[CORPORATE SEAL]

**Exhibit A**

# THIRD AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS

**THIS THIRD AGREEMENT TO MODIFY PROMISSORY NOTE AND RELATED LOAN DOCUMENTS** (the "Agreement") is entered into this 25th day of May, 2018 by and among **CHARTERBANK F/K/A RESURGENS BANK** (the "Lender") and **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower").

## WITNESSETH:

WHEREAS, on August 4, 2016, Lender made a loan (the "Loan") to Borrower in the amount of $1,581,600.00, as evidenced by that certain Note of even date therewith in the amount of the Loan, as amended by that certain Agreement to Modify Promissory Note dated January 6, 2017 and as further amended by that certain Second Agreement to Modify Promissory Note and Related Loan Documents, dated March 21, 2017 (as amended, collectively, the "Note"); and

WHEREAS, the Note and all other related Loan documents executed by Borrower in favor of Lender are collectively hereinafter referred to as the "Loan Documents"; and

WHEREAS, Borrower has requested and Lender has agreed to modify the Note to defer principal payments due under the Note for the months of June, July and August of 2018 as set forth herein;

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) in hand paid and the premises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agrees as follows:

1. The recitals contained hereinabove are incorporated herein as if fully set forth, and the terms and conditions of all documents executed in connection with the Loan Documents are incorporated herein by this reference.

2. The Note is hereby modified and amended as follows:

   (a) Notwithstanding anything contained in the Note to the contrary, Borrower shall make interest only payments for the months of June, July and August of 2018.

   (b) Commencing on September 1, 2018, Borrower shall make principal and interest payments in the amount of $ 19,347.26 and shall continue making principal and interest payments thereunder in accordance with the terms of the Note through and including the Maturity Date thereof.

3. Borrower acknowledges, agrees warrants that no default exists under the Note, the Loan or any of the Loan Documents. Except as amended and modified by this Agreement, all other terms and conditions of the Note and the other Loan Documents shall remain the same and shall remain in full force and effect. The parties hereto acknowledge and agree that the execution and delivery of this Agreement shall not effect a novation

**Exhibit A**

of the Note, or any other Loan Documents evidencing or securing same and shall not release any collateral or any obligations owed by Borrower to Lender.

4. Borrower hereby acknowledges that it does not have any claim of offset, defense, or cause of action of any nature against Lender which would impair or in any way reduce or diminish its liability to Lender. Borrower further represents and asserts that it has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan transaction that is the subject matter of this Agreement, including but not limited to, claims arising from fraud, misrepresentation, breach of contract, breach of commitment, impairment of collateral or waiver of any terms and provisions of any documents executed or delivered in connection with the Note, the Loan Agreement or any of the Loan Documents and Borrower hereby releases any and all such defenses, claims, damages or defenses against Lender.

5. This Agreement shall inure to the benefit of the heirs, successors and assigns of the parties hereto and may be executed in multiple counterparts, each of which taken as a whole, shall constitute one and the same instrument. Portions of this Agreement deemed to be unenforceable shall be excised and the remaining provisions shall stand on their own. Time is of the essence of this Agreement and this Agreement shall be governed by the laws of the State of Georgia.

6. Borrower represents, warrants and certifies to Lender that they are in full compliance with all terms and conditions of the SBA Loan Authorization dated November 21, 2014, and all amendments thereto, and acknowledges, agrees and reaffirms all obligations imposed by the aforesaid SBA Loan Authorization and agree to be bound thereby and to comply with the terms thereof.

7 Borrower authorizes and directs Lender to take all actions necessary to conform the Loan Documents, including without limitation, the Note, to the terms as herein agreed and releases Lender, its officers, directors, employees and attorneys from any and all claims, actions, damages, and suits of any kind and nature arising out of or relating to the Loan or any Loan Documents for or in connection with this Agreement.

(SIGNATURES ON FOLLOWING PAGE)

**Exhibit A**

IN WITNESS WHEREOF, the parties hereto have signed, sealed and delivered this Agreement on the date first written above.

**LENDER:**

CHARTERBANK

By: ______________________________
Leigh Milton, Senior Vice President

[BANK SEAL]

Signed, sealed and delivered in the presence of:

______________________________
Unofficial Witness

______________________________
Notary Public
April 29, 2021

[NOTARY SEAL]

**BORROWER:**

PIZZA BAKERS ON PONCE, INC.,
a Georgia corporation

By: ______________________________
Thomas David Hart, CEO/President

[CORPORATE SEAL]

Signed, sealed and delivered in the presence of:

______________________________
Unofficial Witness

______________________________
Notary Public
April 29, 2021

[NOTARY SEAL]

**Exhibit A**

Loan No.[redacted]6564

# LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT ("Modification") is made and entered into effective as of the 27th day of January, 2020, by and between Pizza Bakers on Ponce, Inc dba Mellow Mushroom Pizza Bakers-Decatur ("Borrower") Thomas David Hart and Jane E. Hart ("Guarantor" and collectively with Borrower, "Obligors") and CENTERSTATE BANK, N.A. f/k/a Resurgens Bank; via Charter Bank & National Bank of Commerce ("Lender").

## WITNESSETH:

WHEREAS, Borrower did execute and deliver to Lender a Note dated August 4th, 2016 ("Note")[redacted]6564) Evidencing a loan in the initial principal sum of ONE MILLION FIVE HUNDERES THOUSAND SIX HUNDER DOLLARS AND NO/CENTS ($1,581,600.00) DOLLARS (hereinafter referred to as the "Loan");

WHEREAS, Guarantor did execute and deliver to Lender a certain Unconditional Unlimited Guarantee, guaranteeing all of the Borrower's obligations under the Loan;

WHEREAS, Obligors executed and delivered to Lender a Loan Agreement, Commercial Security Agreement, and other documents executed in connection with, evidencing and securing the Note (collectively, "Loan Documents");

WHEREAS, on January 6th, 2017, the note was modified to change the interest rate adjustment period thereunder from monthly to every calendar quarter; and on March 21, 2017, the note was modified to extend the interest only period 3 months and third modification completed May 25, 2018 to defer principle payments of June, July and August 2018.

WHEREAS, the balance due on the Loan as of the date of this Modification is $1,295,896.27 (the "Outstanding Balance"); and

WHEREAS, the Obligors have requested and the Lender and SBA have agreed to amend the Note to extend the Maturity Date as set forth in more detail herein.

NOW THEREFORE, for and in consideration of TEN AND NO/100 ($10.00) DOLLARS, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Obligors and Lender herby agree as follows:

1. *All references to the Maturity Date in the Note and in the Loan Documents shall be modified such that the Maturity Date of the Note shall now be February 1st, 2031 (2/1/2031).* The Outstanding Balance shall be re-amortized using the new Maturity Date and the payments shall be recalculated accordingly.

2. Obligors confirm and agree that all Loan Documents and any representations, warranties and conditions contained in said Loan Documents continue to be true and correct, and Obligors hereby ratify and reaffirm such Loan Documents, and restate

**Exhibit A**

that all such Loan Documents shall continue to secure, evidence, and apply to the Note as modified by this Modification.

3. Except as expressly set forth herein, all other terms and conditions of the Loan Documents shall remain in full force and effect. In no event shall this Modification or any provision hereof, in any way be held to invalidate or impair any right or remedy granted Lender under the terms of the Note or any Loan Documents.

4. This Modification shall be construed in accordance with the Laws of the State of Florida/ Georgia / Alabama (select State) and shall be binding upon the parties hereto, their successors and assigns.

5. Obligors hereby release Lender, its officers, directors, shareholders, employees, representatives, affiliates, attorneys or agents from all claims, losses, damages or liabilities, in law, equity or otherwise, arising under common law or statute, by reason of any cause or matter, thing or occurrence from the beginning of the world until the date of this Modification. Lender and Obligors intend that this paragraph have the legal effect of a General Release.

6. WAIVER OF JURY TRIAL: OBLIGORS HEREBY WAIVE ANY AND ALL RIGHTS HE/SHE/THEY MAY HAVE TO A JURY TRIAL IN CONNECTION WITH ANY LITIGATION COMMENCED BY OR AGAINST LENDER WITH RESPECT TO RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO OR UNDER THE LOAN DOCUMENTS, WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE

IN WHTNESS WHEREOF, the undersigned have hereunto set their hands and affixed their seals as of the day and year first above written.

**"BORROWER"**

**PIZZA BANKERS ON PONCE, INC.**
**A Georgia Corporation**

**By:** [signature] **(SEAL)**
Thomas David Hart, CEO/ President

**"GUARANTORS"**

[signature] **(SEAL)**
**Thomas David Hart, Guarantor**

Jane E Hart [signature] **(SEAL)**
**Jane E. Hart, Guarantor**

**Exhibit A**

U.S. Small Business Administration

SBA

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | [redacted]7050-[redacted] |
| SBA Loan Name | Mellow Mushroom Pizza Bakers - Decatur |
| Guarantor | Thomas D. Hart |
| Borrower | Pizza Bakers on Ponce, Inc. |
| Lender | Resurgens Bank |
| Date | August 4, 2016 |
| Note Amount | 1,581,600.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated August 4, 2016 in the principal amount of One Million Five Hundred Eighty One Thousand Six Hundred and 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



**Composite Exhibit B**

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;



**Composite Exhibit B**

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.



**Composite Exhibit B**

10. STATE-SPECIFIC PROVISIONS:

Time if of the essence of this Agreement.

Guarantor hereby waives the right to require the Holder of the obligation hereby guaranteed to take action against the debtor as provided in O.C.G.A. Section 10-7-24.



**Composite Exhibit B**

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

______________________________(SEAL)
Thomas D. Hart



**Composite Exhibit B**

# GUARANTOR'S ACKNOWLEDGEMENT AND CONSENT

The undersigned ("Guarantor") hereby acknowledges and agrees that:

1. **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower"), is indebted to **RESURGENS BANK** ("Lender"), in accordance with the terms and conditions of that certain U.S. Small Business Administration Note dated August 4, 2016, in the original principal amount of $1,581,600.00 (the "Note"); and

2. Borrower has executed and delivered to Lender that certain Agreement to Modify Promissory Note and Related Loan Documents dated January 6, 2017 changing the interest rate adjustment period to every calendar quarter (the "Note Modification");

3. To guarantee Borrower's obligation under the Note, as thereafter renewed, modified or amended from time to time, Guarantor executed and delivered to Lender that certain Unconditional Guarantee dated as of August 4, 2016 (the "Guarantee"); and

4. Guarantor hereby consents to, acknowledges and agrees that (i) the Guarantee continues to guarantee all of Borrower's obligations pursuant to the Note, as modified by the Note Modification, and said Note Modification shall not impair or otherwise diminish or affect Guarantor's obligations under the Guarantee and (ii) all of the liabilities and obligations of Guarantor under the Guarantee are hereby reaffirmed, ratified and confirmed in all respects.

DATED this the 6th day of January, 2017.

Sworn to and subscribed
before me, this 6th day
of January, 2017.

[signature]
NOTARY PUBLIC

My Commission Expires:
April 29, 2017

[NOTARIAL SEAL]

[signature] (SEAL)
Thomas D. Hart

SEAL



**Composite Exhibit B**

# GUARANTOR'S ACKNOWLEDGEMENT AND CONSENT

The undersigned ("Guarantor") hereby acknowledges and agrees that:

1. **PIZZA BAKERS ON PONCE, INC.,** a Georgia corporation (the "Borrower"), is indebted to **RESURGENS BANK** ("Lender"), in accordance with the terms and conditions of that certain U.S. Small Business Administration Note dated August 4, 2016, in the original principal amount of $1,581,600.00, as amended by that certain Agreement to Modify Promissory Note and Related Loan Documents dated January 6, 2017 and as further amended by that certain Second Agreement to Modify Promissory Note and Related Loan Documents dated March 21st, 2017 (as amended, collectively, the "Note"); and

2. Borrower has executed and delivered to Lender that certain Third Agreement to Modify Promissory Note and Related Loan Documents dated May ___, 2017 deferring the April 4, 2018, May 4, 2018 and June 4, 2018 monthly payments (the "Note Modification");

3. To guarantee Borrower's obligation under the Note, as thereafter renewed, modified or amended from time to time, Guarantor executed and delivered to Lender that certain Unconditional Guarantee dated as of August 4, 2016, as reaffirmed in that certain Guarantor's Acknowledgment and Consent dated January 6, 2017, as further reaffirmed in that certain Guarantor's Acknowledgement and Consent dated March ___, 2017 (collectively, the "Guarantee"); and

4. Guarantor hereby consents to, acknowledges and agrees that (i) the Guarantee continues to guarantee all of Borrower's obligations pursuant to the Note, as modified by the Note Modification, and said Note Modification shall not impair or otherwise diminish or affect Guarantor's obligations under the Guarantee and (ii) all of the liabilities and obligations of Guarantor under the Guarantee are hereby reaffirmed, ratified and confirmed in all respects.

DATED this the 25 day of May, 2018.

Sworn to and subscribed
before me, this 25 day
of May, 2018.

[signature]
NOTARY PUBLIC

[signature] (SEAL)
Thomas D. Hart

My Commission Expires: April 29, 2021

[NOTARIAL SEAL]



**Composite Exhibit B**

U.S. Small Business Administration

SBA

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | [redacted]7050[redacted] |
| SBA Loan Name | Mellow Mushroom Pizza Bakers - Decatur |
| Guarantor | Jane E. Hart |
| Borrower | Pizza Bakers on Ponce, Inc. |
| Lender | Resurgens Bank |
| Date | August 4, 2016 |
| Note Amount | 1,581,600.00 |

1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

The "Note" is the promissory note dated August 4, 2016 in the principal amount of One Million Five Hundred Eighty One Thousand Six Hundred and 00/100 Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.



**Composite Exhibit C**

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

C. Release any Borrower or any guarantor of the Note;

D. Compromise or settle with the Borrower or any guarantor of the Note;

E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:
   1) Require presentment, protest, or demand upon Borrower;
   2) Redeem any Collateral before or after Lender disposes of it;
   3) Have any disposition of Collateral advertised; and
   4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
   1) Any default under the Note;
   2) Presentment, dishonor, protest, or demand;
   3) Execution of the Note;
   4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5) Any change in the financial condition or business operations of Borrower or any guarantor;
   6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
   7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
   1) Lender failed to obtain any guarantee;
   2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3) Lender or others improperly valued or inspected the Collateral;
   4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;



**Composite Exhibit C**

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.



**Composite Exhibit C**

10. STATE-SPECIFIC PROVISIONS:

Time if of the essence of this Agreement.

Guarantor hereby waives the right to require the Holder of the obligation hereby guaranteed to take action against the debtor as provided in O.C.G.A. Section 10-7-24.



**Composite Exhibit C**

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Jane E. Hart (SEAL)
Jane E. Hart



Composite Exhibit C

# GUARANTOR'S ACKNOWLEDGEMENT AND CONSENT

The undersigned ("Guarantor") hereby acknowledges and agrees that:

1. **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower"), is indebted to **RESURGENS BANK** ("Lender"), in accordance with the terms and conditions of that certain U.S. Small Business Administration Note dated August 4, 2016, in the original principal amount of $1,581,600.00 (the "Note"); and

2. Borrower has executed and delivered to Lender that certain Agreement to Modify Promissory Note and Related Loan Documents dated January 6, 2017 changing the interest rate adjustment period to every calendar quarter (the "Note Modification");

3. To guarantee Borrower's obligation under the Note, as thereafter renewed, modified or amended from time to time, Guarantor executed and delivered to Lender that certain Unconditional Guarantee dated as of August 4, 2016 (the "Guarantee"); and

4. Guarantor hereby consents to, acknowledges and agrees that (i) the Guarantee continues to guarantee all of Borrower's obligations pursuant to the Note, as modified by the Note Modification, and said Note Modification shall not impair or otherwise diminish or affect Guarantor's obligations under the Guarantee and (ii) all of the liabilities and obligations of Guarantor under the Guarantee are hereby reaffirmed, ratified and confirmed in all respects.

DATED this the 6th day of January, 2017.

Sworn to and subscribed
before me, this 6th day
of January, 2017.

Allxor J Hernandez _______________ Jane E. Hart _______________(SEAL)
NOTARY PUBLIC — Jane E. Hart

My Commission Expires: october 18, 2020

[NOTARIAL SEAL]

ALEXANDER JOVAN HERNANDEZ
MY COMMISSION EXPIRES
NOTARY
PUBLIC
OCTOBER 18, 2020
FORSYTH COUNTY, GEORGIA



**Composite Exhibit C**

# GUARANTOR'S ACKNOWLEDGEMENT AND CONSENT

The undersigned ("Guarantor") hereby acknowledges and agrees that:

1. **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (the "Borrower"), is indebted to **RESURGENS BANK** ("Lender"), in accordance with the terms and conditions of that certain U.S. Small Business Administration Note dated August 4, 2016, in the original principal amount of $1,581,600.00, as amended by that certain Agreement to Modify Promissory Note and Related Loan Documents dated January 6, 2017 (as amended, the "Note"); and

2. Borrower has executed and delivered to Lender that certain Second Agreement to Modify Promissory Note and Related Loan Documents dated March 21st, 2017 extending the interest only payments for three (3) additional months (the "Note Modification");

3. To guarantee Borrower's obligation under the Note, as thereafter renewed, modified or amended from time to time, Guarantor executed and delivered to Lender that certain Unconditional Guarantee dated as of August 4, 2016, as reaffirmed by that certain Guarantor's Acknowledgment and Consent dated January 6, 2017 (collectively, the "Guarantee"); and

4. Guarantor hereby consents to, acknowledges and agrees that (i) the Guarantee continues to guarantee all of Borrower's obligations pursuant to the Note, as modified by the Note Modification, and said Note Modification shall not impair or otherwise diminish or affect Guarantor's obligations under the Guarantee and (ii) all of the liabilities and obligations of Guarantor under the Guarantee are hereby reaffirmed, ratified and confirmed in all respects.

DATED this the 2 day of ~~March~~ June, 2018.

Sworn to and subscribed
before me, this 2 day
of ~~March~~ June, 2018

Kimberly Mitchell
NOTARY PUBLIC
04215176
My Commission Expires: 3/11/20

[NOTARIAL SEAL]

Jane E. Hart (SEAL)
Jane E. Hart

KIMBERLY A. MITCHELL
NOTARY
EXPIRES
GEORGIA
March 11, 2020
PUBLIC
CHEROKEE COUNTY

Guarantor's Acknowledgement

**Composite Exhibit C**

Deed Book 56485 Pg 526
Filed and Recorded Aug-09-2016 08:30am
2016-0253700
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Prepared by and Return to:
Kathleen B. Guy, Esq.
ANDERSEN, TATE & CARR, P.C.
One Sugarloaf Centre, Suite 4000
1960 Satellite Boulevard
Duluth, GA 30097
File # 024615.070019

**RESIDENTIAL**
**DEED TO SECURE DEBT**
**AND SECURITY AGREEMENT**

ATTENTION COUNTY CLERK: This instrument covers goods which are or are to become fixtures related to the real estate described below and is to be filed for record on the real property records and ALSO TO BE INDEXED, not only as a deed to secure debt and security agreement, but also as a financing statement in the index of financing statements.

STATE OF GEORGIA
COUNTY OF GWINNETT

THIS DEED TO SECURE DEBT AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made and entered into this 4th day of August, 2016, by and between **THOMAS D. HART AND JANE E. HART**, as party or parties of the first part (hereinafter collectively referred to as "Grantor"), and **RESURGENS BANK**, as party of the second part (hereinafter referred to as "Grantee");

W I T N E S S E T H:

That for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations hereinafter set forth, Grantor does hereby grant, bargain, sell, convey, assign, transfer and set over unto Grantee and the successors and assigns of Grantee all of the following described land and interests in land, estates, easements, tenements, rights, improvements, property, fixtures, equipment, appliances and appurtenances (hereinafter collectively referred to as the "Premises"):

(a) All those certain tracts or parcels of land more particularly described below (the "Land"):

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE;

SEE EXHIBIT "B" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE for additional terms and conditions; and

**Exhibit D**

(b) All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all fixtures, machinery, equipment, appliances and personal property of every kind and nature whatsoever now or hereafter owned by Grantor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land including all extensions, additions, improvements, betterments, renewals and replacements of any of the foregoing and all right, title and interest of Grantor in any such fixtures, machinery, equipment, appliances, and personal properties, all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Premises as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed;

TOGETHER WITH all easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estates, rights, titles, interests, minerals, royalties, easements, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor and the reversion and reversions, remainder and remainders, the rents, issues, profits and revenues of the Premises from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor of, in, and to the same; reserving only the right to Grantor to collect the same so long as Grantor is not in default hereunder;

TO HAVE AND TO HOLD the Premises and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Grantee and the successors and assigns of Grantee, IN FEE SIMPLE forever; and Grantor covenants that Grantor is lawfully seized and possessed of the Premises as aforesaid, and has good right to convey the same, that the same is unencumbered except as specifically stated otherwise herein and that Grantor does warrant and will forever defend the title thereto against the claims of all persons whomsoever.

This conveyance is intended to operate and is to be construed as a deed passing the title to the Premises to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt (Chapter 67-13 of the Code of Georgia of 1933), and not as a mortgage, and is given to secure a debt evidenced by that certain guaranty of a promissory note (hereinafter referred to as "Note") dated August 4, 2016 executed by **PIZZA BAKERS ON PONCE, INC.**, a Georgia corporation (if other than Grantor, then such person(s) or entity(s) jointly and severally with Grantor an "Obligor" or "Obligors"), payable to the order of Grantee, in the original amount of **ONE MILLION FIVE HUNDRED EIGHTY-ONE THOUSAND SIX HUNDRED AND 00/100 ($1,581,600.00)**, with interest at the rate therein specified, with a final maturity date of **February 4, 2027.** ***This Deed to Secure Debt secures a guaranty of a promissory note and, therefore, is exempt from intangible tax pursuant to O.C.G.A. Section 48-6-65(a).***



**Exhibit D**

This Deed secures, in addition to the indebtedness evidenced by the Note, all renewals, extensions, and substitutions and modifications thereof, all other and further indebtedness of any amount which is now or may be hereafter owed by an Obligor to Grantee, whether individually or jointly with others not parties hereto, and whether direct or indirect, as maker, endorser, guarantor, surety, or otherwise, and all costs of collection including attorneys' fees in the amount of fifteen percent (15%) of the indebtedness secured hereby if collected by law or through an attorney-at-law.

The parties hereto further expressly agree that should all monies advanced to the Grantor herein pursuant to the Note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt and Security Agreement shall not become null and void by operation of law or otherwise, but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor. Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. Section 44-14-80(a)(2).

Should the indebtedness secured by this Deed be paid according to the tenor and effect thereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Deed shall be cancelled and surrendered.

Grantor hereby further covenants and agrees with Grantee as follows:

## ARTICLE I

**1.01. Payment of Indebtedness.** The Note shall be paid according to the tenor thereof and all other sums now or hereafter secured hereby promptly as the same shall become due.

**1.02. Taxes, Liens and Other Charges.**

(a) In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to adversely affect Grantee, Grantor shall promptly pay any such tax. If Grantor falls to make such prompt payment or if, in the opinion of Grantee, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment or if, in the opinion of Grantee, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire debt secured by this Deed and all interest accrued thereon shall, at the option of Grantee, become immediately due and payable.

(b) Grantor shall pay promptly, or cause to be paid promptly, before the same become delinquent, all taxes, liens, assessments and charges of every character including all utility charges, whether public or private, already levied or assessed or that may



Exhibit D

hereafter be levied or assessed upon or against the Premises; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c) Grantor shall not suffer any mechanic's, materialman's, laborer's, statutory or other lien which might or could be prior to or equal to the lien of this Deed to be created and to remain outstanding upon all or any part of the Premises.

(d) Grantor shall not encumber all or any part of the Premises without the prior written consent of Grantee.

**1.03. Insurance.**

(a) Grantor shall procure for, deliver to and maintain for or cause to be procured for, delivered to and maintained for, the benefit of Grantee during the term of this Deed, original paid up insurance policies of insurance companies acceptable to Grantee and in amounts, in form and substance, and with expiration dates acceptable to Grantee and containing non-contributory standard mortgagee clauses or their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Grantee, and waiver of subrogation clauses, providing the following types of insurance on the Premises: (i) insurance against loss or damage by fire, lightning, vandalism and malicious mischief and against such other hazards as are presently included in so-called "extended coverage" and against such other insurable hazards as, under good insurance practices, from time to time are insured against for properties of similar character and location; the amount of which insurance shall be not less than the balance of the indebtedness evidenced by the Note nor less than one hundred percent (100%) of the full replacement cost of the Premises without deduction for depreciation; and which policies of insurance shall contain satisfactory replacement cost endorsement; (ii) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against for similar premises.

(b) Grantee is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant hereto, and to collect and receive the proceeds from any policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee instead of to Grantor and Grantee jointly. In the event any insurance company falls to disburse directly and solely to Grantee but disburses instead either solely to Grantor or to Grantor and Grantee jointly, Grantor agrees immediately to endorse and transfer such proceeds to Grantee. Upon the failure of Grantor to endorse and transfer such proceeds as aforesaid, Grantee may execute such endorsements or transfer for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as Grantor's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Grantee may apply the net proceeds or any part thereof, in its sole discretion, (i) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Grantee elects, together with any prepayment premiums, fees, or charges herein or in the Note provided, (ii) to the repair and/or restoration of the Premises or (iii) for any other purposes or objects for which Grantee is entitled to advance funds under this Deed or any obligation secured hereby; all without affecting the lien of this Deed or any obligation secured

hereby; and any balance of such proceeds then remaining shall be paid to Grantor. Grantee shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy regardless of the cause of such failure. Grantee may require Grantor to deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay taxes and assessments and insurance premiums in full. Upon any default in the provisions of this Deed or the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the indebtedness secured hereby in such manner as it may elect.

**1.04. Condemnation.** If all or any portion of the Premises shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), either temporarily or permanently, then the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable, without notice to Grantor or any other person or entity, or at Grantee's further option, Grantee may require Grantor to apply all compensation, awards, proceeds, or other payments from such condemnation to the restoration and repair of the Premises as may be necessary to cure the injury to the Premises occasioned by such condemnation. Grantee shall be entitled to receive all compensation, awards, proceeds, and other payments or relief relating to or payable as a result of such condemnation. Grantee is hereby authorized, at its option, to commence, appear in and prosecute, in its own or in Grantor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorneys' fees, Grantee may apply the net proceeds or any part thereof, at its option, (a) to the payment of the indebtedness hereby secured, whether or not due and in whatever order Grantee elects, together with any prepayment premiums, fees, or charges herein or in the Note provided, (b) to the repair and/or restoration of the Premises or (c) for any other purposes or objects for which Grantee is entitled to advance funds under this Deed, all without affecting the lien of this Deed; and any balance of such monies then remaining shall be paid to Grantor. Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as Grantee may require.

**1.05. Care of Premises.** Grantor shall keep all improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything which will increase the risk of fire or other hazard to the Premises or any part thereof. If the Premises or any part thereof is damaged by fire or any other cause, Grantor shall give immediate written notice thereof to Grantee. Grantee or its representative is hereby authorized to enter upon and inspect the Premises. Grantor shall promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof. If all or any part of the Premises shall be damaged by fire or other casualty, Grantor shall promptly restore the Premises to the equivalent of its original condition; and if a part of the Premises shall be damaged through condemnation, Grantor shall promptly restore, repair or alter the remaining portions of the Premises in a manner satisfactory to Grantee. Grantor shall not be obligated to so restore unless in each instance, Grantee agrees to make available to Grantor (pursuant to a procedure satisfactory to Grantee) any net insurance or condemnation proceeds actually received by Grantee hereunder in connection with such



**Exhibit D**

casualty loss or condemnation, to the extent such proceeds are required to defray the entire expense of restoration shall in no way relieve Grantor of its obligation to restore. In the event all or any portion of the Premises shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Grantee a sum equal to the amount by which the estimated cost of the restoration of the Premises (as determined by Grantee in its good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Grantee in connection with such damage or destruction.

**1.06. Expenses.** Grantor shall pay or reimburse Grantee, upon demand therefor, for all attorney's fees, costs and expenses incurred by Grantee in any suit, action, legal proceeding or dispute of any kind in which Grantee is made a party or appears as party plaintiff or defendant, affecting the indebtedness secured hereby, this Deed or the interest created herein, or the Premises, including, but not limited to the exercise of the power of sale contained in this Deed, any condemnation action involving the Premises or any action to protect the security hereof; and any such amounts paid by Grantee shall be added to the indebtedness secured by the lien of this Deed.

**1.07. Subrogation.** Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with proceeds of the indebtedness secured hereby or otherwise discharged or paid by Grantee. Grantor waives all rights of subrogation until all obligations secured hereby are paid in full.

**1.08. Limit of Validity.** If from any circumstances whatsoever fulfillment of any provision of this Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the applicable limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.08 shall control every other provision of this Deed and the Note.

**1.09. Sale or Transfer.** In the event of sale or transfer of the Premises, Grantee shall have all rights and remedies of a Lender as may be permitted under Georgia law, including but not limited to the right to approve or reject such sale or to accelerate the maturity of the Note.

## ARTICLE II

**2.01. Events of Default.** The terms "Default", "Defaults", "Event of Default" or "Events of Default" wherever used in this Deed, shall mean any one or more of the following events:

(a) Failure to pay as and when due and payable any installment of principal or interest secured by this Deed as and when due; or

(b) Failure by Grantor to duly observe or perform any term, covenant, condition or agreement of this Deed; or



Exhibit D

(c) Any warranty of Grantor contained in this Deed or in any other instrument, document, transfer, conveyance, assignment or loan agreement given by Grantor with respect to the indebtedness secured hereby, proves to be untrue or misleading in any material respect; or

(d) The filing of any federal tax lien against the Premises; or

(e) The filing by an Obligor of a voluntary petition in bankruptcy or the adjudication of an Obligor as a bankrupt or insolvent, or the filing by or against an Obligor of any petition seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or an Obligor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of an Obligor or of substantially all of an Obligor's property or of any or all of the rents, issues, profits or revenues thereof, or the making by an Obligor of any general assignment for the benefit of creditors, or the admission in writing by an Obligor of its inability to pay its debts generally as they become due; or

(f) The entry by a court of competent jurisdiction of an order, judgment or decree approving a petition filed against an Obligor seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of an Obligor or of substantially all of an Obligor's property or of any or all of the rents, issues, profits or revenues- thereof without the consent or acquiescence of an Obligor; or

(g) The filing by any person or entity of any claim in any legal or equitable proceeding challenging the priority lien of this Deed.

**2.02. Acceleration of Maturity.** If an Event of Default shall have occurred and be continuing, then the entire indebtedness secured hereby shall, at the option of Grantee, immediately become due and payable without notice or demand, which are hereby expressly waived, time being of the essence of this Deed; and no omission on the part of Grantee to exercise such option when entitled to do so shall be construed as a waiver of such right.

**2.03. Grantee's Right to Enter and Take Possession, Operate and Apply Revenues.**

(a) If an Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Premises and if, and to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of all the Premises without the appointment of a receiver, or an application therefor, and may exclude Grantor and its agents and employees wholly therefrom, and may have joint access with Grantor to the books, papers and accounts of Grantor.

(b) If Grantor shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver



Exhibit D

immediate possession of the Premises to Grantee, to the entry of which judgment or decree Grantor hereby specifically consents. Grantor will pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Grantee, its attorneys and agents; and all such expenses and compensation shall, until paid, be secured by the lien of this Deed.

(c) Upon every such entering upon or taking of possession, Grantee may hold, store, use, operate, manage and control the Premises and conduct the business thereof or complete the improvement thereof with any costs thereof secured hereby, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Premises insured; (iii) manage and operate the Premises and exercise all the rights and powers of Grantor to the same extent as Grantor could in its own name or otherwise with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee, all as Grantee from time to time may determine to be in its best interest; and perform all acts required of Grantor as lessor under any lease of all or any part of the Premises, all as Grantee may from time to time determine to be to its best advantage. Grantee may collect and receive all the rents, issues, profits and revenues from the Premises, including those past due as well as those accruing thereafter, and, after deducting (aa) all expenses of taking, holding, managing and operating the Premises (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other similar charges as Grantee may at its option pay; (ee) other proper charges upon the Premises or any part thereof; and (ff ) the reasonable compensation, expenses and disbursements of the attorneys and agents of Grantee, Grantee shall apply the remainder of the monies and proceeds so received by Grantee, first to the payment of accrued interest; and then to the payment of overdue installments of principal.

(d) For the purpose of carrying out the provisions of this Article II, Grantor hereby irrevocably constitutes and appoints Grantee the true and lawful attorney-in-fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all action of said attorney-in-fact in the Premises.

(e) Whenever all that is due upon such interest, deposits and principal installments and under any of the terms, covenants, conditions and agreements of this Deed, shall have been paid and all Events of Default cured and satisfied, Grantee shall surrender possession of the Premises to Grantor, its successors or assigns; provided, that the same right of taking possession, shall exist if any subsequent Event of Default shall occur and be continuing.

**2.04. Performance by Grantee of Default by Grantor.** If Grantor shall default in the payment, performance or observance of any term, covenant or condition of this Deed, Grantee may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Grantee in connection therewith, shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate provided in the Note. Grantee shall be the sole judge of



**Exhibit D**

the necessity for any such actions and of the amounts to be paid. Grantee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Grantor or any person in possession holding under Grantor. Grantor expressly acknowledges and agrees, however, that notwithstanding anything contained in this Paragraph 2.04 to the contrary, Grantee shall not be obligated under this Paragraph 2.04 to incur any expense or to perform any act whatsoever.

**2.05. Receiver.** If an Event of Default shall have occurred and be continuing, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right without notice and without regard to the occupancy or value of any security for the indebtedness secured hereby or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor shall pay to Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05; and all such expenses shall be secured by this Deed.

**2.06. Enforcement.**

(a) If an Event of Default shall have occurred and be continuing, Grantee, at its option, may sell the Premises or any part of the Premises at public sale or sales before the door of the courthouse of the county in which the Premises or any part of the Premises is situated, to the highest bidder for cash, in order to pay the indebtedness secured hereby and accrued interest thereon and insurance premiums, liens, fines, assessments, taxes and charges, including utility charges, if any, with accrued interest thereon, all as provided hereinabove, and all expenses of the sale and of all proceedings in connection therewith, including attorneys' fees as herein above provided, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple, with full warranties of title and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the indebtedness secured hereby and shall not be exhausted by one exercise thereof but may be exercised until full payment of all indebtedness secured hereby.

(b) If an Event of Default shall have occurred and be continuing, Grantee may, in addition to and not in abrogation of the rights covered under subparagraph (a) of this Paragraph 2.06, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term,



**Exhibit D**

covenant, condition or agreement of this Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

**2.07. Purchase by Grantee.** Upon any foreclosure sale, Grantee may bid for and purchase the Premises and shall be entitled to apply all or any part of the indebtedness secured hereby as a credit to the purchase price.

**2.08. Application of Proceeds of Sale.** In the event a foreclosure sale of the Premises pursuant to subparagraph (a) of Paragraph 2.06 hereof, the proceeds of said sale shall be applied, first, to the expenses of such sale and of all proceedings in connection therewith, including attorneys' fees as provided hereinabove, then to insurance premiums, liens, assessments, taxes and charges, including utility charges, advanced by Grantee, then to accrued interest, then to payment of the outstanding principal balance of the indebtedness secured hereby, together with any prepayment premiums, fees, or charges herein or in the Note provided, and finally the remainder, if any, shall be paid to Grantor.

**2.09. Grantor as Tenant Holding Over.** In the event of any such foreclosure sale by Grantee, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

**2.10. Leases.** Grantee, at its option, is authorized to foreclose this Deed subject to the rights of any tenants of the Premises, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

**2.11. Discontinuance of Proceedings and Restoration of the Parties.** In case Grantee shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder without waiver of any default and without novation, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

**2.12. Remedies Cumulative.** No right, power or remedy conferred upon or reserved to Grantee by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

**2.13. Waiver.**

(a) No delay or omission of Grantee or of any holder of the Note to exercise any right, power or remedy accruing upon any default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such default, or acquiescence therein; and every right, power and remedy given by this Deed to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee. No consent or waiver, express or implied, by Grantee to or of any breach or default by Obligor in the performance of the obligations thereof hereunder shall be deemed or

construed to be a consent or waiver to or of any other breach or default in the performance of the same or any other obligations of Obligor hereunder. Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or default by Obligor.

(b) If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Premises from the lien of this Deed or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consents to the filing of any map, plat or replat affecting the Premises; (vi) consents to the granting of any easement or other right affecting the Premises; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed or any other obligation of Obligor or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Default. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the indebtedness secured hereby, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings of Obligor.

**2.14. Suits to Protect the Premises.** Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Premises by any acts which may be unlawful or any violation of this Deed; (b) to preserve or protect its interest in the Premises and in the rents, issues, profits and revenues arising therefrom; and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee.

## ARTICLE III

**3.01. Successors and Assigns.** This Deed shall inure to the benefit of and be binding upon Grantor and Grantee and their respective legal representatives, successors and assigns. Whenever a reference is made in this Deed to Grantor or Grantee such reference shall be deemed to include a reference to the legal representatives, successors and assigns of Grantor or Grantee, whether so expressed or not.

**3.02. Severability.** If any provision of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

**3.03. Applicable Law.** This Deed shall be interpreted, construed and enforced



**Exhibit D**

according to the laws of the State of Georgia.

All notices, demands or requests provided for or permitted to be given pursuant to this Deed must be in writing and shall be deemed to have been properly given or served if delivered in person or sent by United States certified mail, postage prepaid, return receipt requested.

All notices, demands and requests shall be deemed given, if not sooner received, on the third calendar day following the date upon which such notice is deposited in the United States mail. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. Grantor or Grantee shall have the right from time to time and at any time during the term of this Deed to change their respective addresses by giving the other party hereto notice of such change of address.

[SIGNATURE PAGE FOLLOWS]



**Exhibit D**

IN WITNESS WHEREOF Grantor has executed and delivered this Deed under seal as of the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered
in the presence of:

______________________ ______________________(SEAL)
Unofficial Witness Thomas D. Hart

______________________ ______________________(SEAL)
Notary Public Jane E. Hart

(NOTARIAL SEAL)

K. KATHLEEN GUY NOTARY PUBLIC GWINNETT COUNTY, GA My Comm. Exp. May 24, 2018



**Exhibit D**

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 635 OF THE 2ND DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 31, TAYLOR GLEN A.K.A. PERFECT WORLD, INC. – TAYLOR ROAD SUBDIVISION, PHASE 2, AS PER PLAT OF SURVEY RECORDED IN PLAT BOOK 240, PAGES 76 AND 77, FULTON COUNTY, GEORGIA RECORDS; WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.



**Exhibit D**

EXHIBIT "B"

This conveyance is made subject to that certain Deed to Secure Debt from Thomas D. Hart and Jane E. Hart, in favor of U.S. Bank National Association ND, dated November 10, 2010, recorded in Deed Book 49690, Page 680, Fulton County, Georgia records. It is agreed that any default thereunder may at the option of the Grantee herein or its successors in title be declared and deemed to be a default under the terms of the within instrument. The Grantor herein hereby assigns and authorizes payment to the Grantee herein or its successors in title of any surplus funds arising from foreclosure of said first security deed.

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.
b) Secured Party or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Debtor or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Debtor, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

The Debtor shall pay all of the Secured Party's reasonable court costs incurred in any proceeding in any Bankruptcy proceeding filed by or against the Secured Party, which shall include, but shall not be limited to filing a Proof of Claim, actions to obtain Relief of Stay or secure Adequate Protection, and any adversary action in Bankruptcy.



**Exhibit D**

Deed Book 56485 Pg 541
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

GRANTOR: THOMAS D. HART AND JANE E. HART

LENDER: RESURGENS BANK

DATE OF SECURITY DEED: AUGUST 4, 2016

**WAIVER OF BORROWER'S RIGHTS**

By execution of this paragraph, Grantor expressly: (1) acknowledges the Right to Accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by Nonjudicial Foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is specifically required to be given under the provisions of said deed to secure debt; (2) Waives any and all rights which Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several states, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided in said Deed to Secure Debt; (3) acknowledges that Grantor has read this Deed and any and all questions regarding the legal effect of said Deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this Deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargain for loan transaction; (5) agrees that Grantor's right to notice shall be limited to those rights to notice provided in this Deed and no other; and (6) agrees that the provisions hereof are incorporated into and made a part of this Deed to Secure Debt.

Signed, sealed and delivered
in the presence of:

______________________ (SEAL)
Unofficial Witness Thomas D. Hart

______________________ (SEAL)
Notary Public, Georgia Jane E. Hart

R. KATHLEEN GUY
NOTARY
My Comm. Exp.
May 24, 2018
PUBLIC
GWINNETT COUNTY, GA

**Exhibit D**

DEED BOOK:14840 PG:1394 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

After recording return to:
Richard G. Gaalema, Esq.
Kitchens Kelley Gaynes, P.C.
5555 Glenridge Connector
Glenridge Highlands One - Suite 800
Atlanta, Georgia 30342
88148.0025

**THIS SECURITY DEED IS SECURING A GUARANTY AND NOT SECURING ANY NEW INDEBTEDNESS AND THEREFORE NO INTANGIBLE TAX IS DUE.**

MAP PARCEL #03N12A051

# DEED TO SECURE DEBT

LOAN NO.[redacted]50-01

STATE OF GEORGIA
COUNTY OF CHEROKEE

THIS INDENTURE, made the 30 day of November, 2022, between **Jane E. Hart**, party of the first part, having a mailing address of 2101 Gaddis Road, Canton, Georgia 30115 (hereinafter collectively called "Grantor"), and **SouthState Bank, N.A. fka Resurgans Bank**, having a mailing address of 1101 First Street South, Winter Haven, FL 33880, as party of the second part (hereinafter called "Grantee").

## WITNESSETH:

FOR AND IN CONSIDERATION of Ten and 00/100 ($10.00) Dollars and other valuable consideration and the indebtedness guaranteed by Grantor which is hereinafter more particularly described, and in order to secure said loan and guarantee of the note evidencing the same, Grantor hereby grants, bargains, conveys, transfers, assigns and sells unto Grantee the following:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Cherokee County, Georgia, and being more particularly described on **Exhibit "A"** attached hereto and incorporated herein by reference, together with all buildings and improvements thereon (hereinafter called the "Property"), and all fixtures currently or in the future attached thereto (the "Fixtures").

TOGETHER WITH: (i) all buildings, structures and other improvements now or hereafter located on the Property or on any part or parcel of the Property (hereinafter called the "Improvements"); (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging to the Property or in anywise appertaining to the Property, and the reversion or reversions, remainder or remainders thereof; (iii) all leases, undertakings to lease, contracts to rent, usufructs and other agreements for use, occupancy or possession now or hereafter in force with respect to the Property or any part or parcel of the Property or any of the Improvements, and any and all other agreements, contracts, licenses, permits and

**Exhibit E**

DEED BOOK:14840 PG:1395 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

arrangements now or hereafter affecting the Property or any part or parcel of the Property or any of the Improvements, whether written or oral and whether now or hereafter made or executed and delivered, (hereinafter collectively called the “Leases”); (iv) all rents, issues, income, revenues and profits now or hereafter accruing from, and all accounts and contract rights now or hereafter arising in connection with, the Property or any part or parcel of the Property or any of the Improvements, including without limitation all rents, issues, income, revenues and profits accruing from, and all accounts and contract rights arising in connection with, the Leases, together with all monies and proceeds now or hereafter due or payable with respect thereto or on account thereof, and (subject to the rights of the parties depositing the same) all security deposits, damage deposits and other funds paid by any lessee, sublessee, tenant, subtenant, licensee, permittee or other obligee under any of the Leases, whether paid in a lump sum or installments, all of which are hereinafter collectively called the “Rents”; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located on the Property or under the Property or on or under any part or parcel of the Property; (vi) all estates, rights, title and interest in the Property, or in any part or parcel of the Property; (vii) all fixtures (including all trade, domestic and ornamental fixtures) now or hereafter on the Property or on any part or parcel of the Property or in or on any of the Improvements, whether actually or constructively attached or affixed, including without limitation all plumbing, heating, lighting, ventilating, refrigerating, water-heating, incinerating, air-conditioning and heating, and sprinkling fixtures, and all screens awnings and signs which are fixtures; (viii) all payments, awards, judgments and settlements (including interest thereon) to which Grantor may be or become entitled as a result of the exercise of the right of eminent domain with respect to the Property or any part or parcel of the Property or any of the Improvements; (ix) all policies of insurance which insure against loss or damage to any property described above and all proceeds from and payments under such policies; (x) all right, title and interest of Grantor in all utility, escrow and all other deposits (and all letters of credit, certificates of deposit, negotiable instruments and other rights and evidence of rights to cash) now or hereafter relating to the Premises or the purchase, construction or operation thereof; and (xi) all right, title, and interest of Grantor as “declarant” or the like under any declaration of covenants, or similar document, whether recorded or unrecorded, and whether or not such document requires a separate instrument to effectuate the transfer of such rights. The Property and all of the foregoing are hereinafter sometimes collectively called the “Premises”.

TO HAVE AND TO HOLD the Premises to the only proper use, benefit and behoof of Grantee, forever, in fee simple.

GRANTOR WARRANTS that Grantor has good and marketable title to the Premises, that Grantor is lawfully seized and possessed of the Premises, that Grantor has the right to convey the Premises, that the Premises are unencumbered and that Grantor shall forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever subject only to those matters listed in Exhibit “B” attached hereto.

THIS INSTRUMENT IS A DEED passing legal title pursuant to the laws of the State of Georgia governing deeds to secure debt and it is not a mortgage. This deed to secure debt is made and intended to secure payment and performance of: (i) Guaranty Agreement dated August 4, 2016 signed by Grantor, as Guarantor in favor of Grantee herein, guarantying indebtedness of Hart Land Management, LLC and Etowah Pizza Bakers, LLC to Grantee in the original principal amount of THREE MILLION FORTY - FOUR THOUSAND AND 00/100 DOLLARS ($3,044,000.00) (“Note”), which final payment is due on or before **February 1, 2031**; (ii) any and all renewal or renewals, extension or extensions, modification or modifications of the Note or Guaranty Agreements, and substitution or substitutions for the Note or Guaranty Agreement(s), either in whole or in part; (iii) all advances, if any, made by Grantee pursuant to the terms of this deed to secure debt including any advances made by Grantee to preserve the Premises or the security interest or security title created hereby on the Premises, or for taxes, assessments or insurance premiums (whether or not the Grantor remains the owner of the Property at the time of such advances);

DEED BOOK:14840 PG:1396 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

(iv) all expenses incident to the collection of the indebtedness secured by this deed to secure debt; (v) all duties and obligations of Grantor under this deed to secure debt; and (vi) any and all other indebtedness which may now or hereafter be due and owing from Grantor to Grantee, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, notifications, consolidations or extensions thereof. The obligations and indebtedness which this deed to secure debt is given to secure are hereinafter sometimes collectively called the "Indebtedness". This deed to secure debt is sometimes called "this Security Deed".

Grantor acknowledges and agrees that this Security Deed shall remain in full force and effect and shall not be deemed cancelled or satisfied as long as Grantor shall have any liabilities or obligations, contingent or otherwise, under the Guaranty Agreement(s), Note, this Security Deed or the Indebtedness.

Should the Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, and should Grantor perform all covenants herein contained in a timely manner, then this Security Deed shall be cancelled and surrendered (subject to the payment to Grantee of a reasonable fee to cover Grantee's costs in connection with said cancellation and surrender).

## ARTICLE I
## COVENANTS OF GRANTOR

1.01 Junior Encumbrances. Without the prior written consent of Grantee, Grantor shall not create or permit to exist any liens or encumbrances on the Premises which are junior and inferior in terms of priority to this Security Deed.

1.02 Payments by Grantor. Grantor shall pay, when due and payable: (i) the Indebtedness in accordance with the terms and conditions of the instruments evidencing the same; (ii) all taxes, all assessments, general or special, and all other charges levied or imposed upon or assessed or placed or made against the Premises, this Security Deed, the Note, the Indebtedness, or any interest of Grantee in the Premises, this Security Deed, the Note or the Indebtedness; (iii) premiums on policies of fire and casualty insurance covering the Premises required by this Security Deed or now or hereafter required by Grantee; (iv) premiums on all life insurance policies now or hereafter pledged as collateral for the Indebtedness or any part thereof; (v) premiums on all liability, rental, rental value, business interruption mortgage and flood insurance policies required by this Security Deed or now or hereafter required by Grantee in connection with the Premises or the Indebtedness or any part of either; and (vi) all ground rents, lease rentals and other payments respecting the Premises payable by Grantor. Grantor shall promptly deliver to Grantee, upon request by Grantee, receipts showing payment in full of all of the foregoing items, other than the Indebtedness. In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws in force governing the taxation of the Indebtedness or the manner of collecting such taxes so as to adversely affect Grantee, Grantor will promptly pay any such tax on or before the date it is due if, in the opinion of counsel for Grantee, Grantee is not prohibited by any such law, order, rule or regulation from requiring such payment by Grantor. If, in the opinion of counsel for Grantee, Grantee is prohibited by any such law, order, rule or regulation from requiring such payment by Grantor, then, at Grantee's option, Grantor shall be in default under this Security Deed as if an event of default had occurred, and Grantee may exercise any or all of the rights and remedies Grantee has upon the occurrence of a default under this Security Deed.

1.03 Grantee's Acts on Behalf of Grantor. In the event Grantor shall either fail or refuse to pay or cause to be paid, as the same shall become due and payable, any item (including all items specified in Section 1.02 hereof) which Grantor is required to pay hereunder or which Grantor may pay to cure a default under this Security Deed, or in the event Grantor shall either fail or refuse to do or perform any act

**Exhibit E**

which Grantor is obligated to do or perform under this Security Deed or which Grantor may do or perform to cure a default under this Security Deed, or in the event Grantee shall be required, or shall find it necessary or desirable in Grantee's discretion, to defend, enforce, or protect any of the rights and benefits accruing to Grantee under any provision of this Security Deed (including without limitation insurance and condemnation proceeds and the Rents) then Grantee, at Grantee's option, may make such payment or do or perform such act on behalf of Grantor, or proceed in any manner to defend, enforce or protect any such rights and benefits. All such payments made by Grantee and all costs and expenses incurred by Grantee in doing or performing all such acts shall be and shall become part of the Indebtedness and shall bear interest at the rate per annum of four (4%) percentage points in excess of the highest rate of interest then being charged with respect to any portion of the Indebtedness from the date paid or incurred by Grantee, and the interest thereon shall also be part of the Indebtedness.

1.04 Further Assurances. Grantor shall at any time, and from time to time, upon request by Grantee, promptly make, execute and deliver, or cause to be made, executed and delivered, any and all other and further instruments, documents, certificates, agreements, letters, representations and other writings as may be necessary or desirable, in the opinion of Grantee, in order to effectuate, complete, correct, perfect or continue and preserve the liability and obligations of Grantor for payment of the Indebtedness and the lien, security interest and security title of Grantee under this Security Deed. Upon any failure of Grantor so to do, Grantee may make, execute, record, file, re-record and/or re-file any and all such instruments for and in the name of Grantor, and Grantor hereby irrevocably appoints Grantee the agent and attorney-in-fact of Grantor to do so. Grantor shall, upon request by Grantee, certify in writing to Grantee, or to any proposed assignee of this Security Deed, the amount of principal and interest then owing on the Indebtedness and whether or not any set offs or defenses exist against all or any part of the Indebtedness.

1.05 Rents and Leases. Grantor hereby assigns to Grantee all Leases on the Premises and all Rent, as additional collateral for the Indebtedness. Grantor shall fully and faithfully perform all of the duties and obligations of the lessor, landlord or owner of the Premises under the Leases and observe, satisfy and comply with all of the terms, covenants, conditions, agreements, requirements, restrictions and provisions of the Leases, and do all acts otherwise necessary to maintain and preserve the Rents and prevent any diminishment or impairment of the value of the Leases or the Rents or the interest of Grantor or Grantee therein or thereunder. Without the prior written consent of Grantee, Grantor shall not further assign the Rents or the Leases, shall not terminate, alter, modify, or amend in any respect, or accept the surrender of, any of the Leases, and shall not collect Rents for more than one (1) month in advance. Grantor shall use Grantor's best efforts and due diligence to procure and deliver to Grantee upon request estoppel letters or certificates from each lessee, tenant, occupant in possession and other user of the Premises or any part thereof, as required by and in form and substance satisfactory to Grantee.

1.06 Maintenance and Repair. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any actual or threatened waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances, rules, regulations and directives of any governmental authority relating to the Premises or any part thereof for the use or occupancy of the Premises or any part thereof. Grantee shall have reasonable access to the Premises for the purposes of inspecting the Property to determine if the Property is being properly maintained, however, this right of access shall not obligate Grantee to inspect or report any violation. No part of the Premises, including but not limited to any of the improvements, shall be removed, demolished or materially altered without the prior written consent of Grantee which consent may be withheld in Grantee's sole discretion. If, at any time during the continuance of the Indebtedness, any addition, alteration, change, repair, reconstruction or other work on the Premises, of any nature, structural or otherwise, becomes necessary or desirable because of damage to or destruction of the Premises or any part thereof, whether by fire or other casualty, or by reason of condemnation, the entire expense thereof, regardless of when the same shall be incurred or become due,

DEED BOOK:14840 PG:1398 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

shall be the sole obligation and responsibility of Grantor, and Grantor shall pay the entire expense thereof promptly when due. Notwithstanding the foregoing or any other provision Grantor shall not be obligated to restore in the event of damage by fire or other casualty, or by condemnation, unless in each instance Grantee agrees to make available to Grantor (pursuant to a procedure satisfactory to Grantee) any net insurance or condemnation proceeds actually received by Lender hereunder in connection with such casualty, loss or condemnation, to the extent such proceeds are required to defray the expense of said restoration; provided that the insufficiency of said insurance or condemnation proceeds to defray the entire expense of restoration shall not relieve Grantor of its obligation to restore. In the event all or any part of the Property shall be damaged or destroyed by fire or other casualty or by condemnation, Grantor shall promptly deposit with Grantee a sum equal to the amount by which the estimated cost of the restoration of the Property (as determined by Lender's good faith judgment) exceeds the actual net insurance or condemnation proceeds received by Grantee in connection with such charge or condemnation, which deposit will be disbursed by Grantee to defray the expense of restoration.

1.07 Insurance. Grantor shall keep the Premises insured against loss or damage by fire and such other casualties and risks as the Grantee may in its sole discretion require from time to time. Such policies shall be written by such companies, in such amounts and under such forms of policies as Grantee may approve. Such policies shall insure Grantee's interest in the Premises, name Grantee as an insured mortgagee and loss payee thereunder, provide that losses thereunder shall be payable to Grantee pursuant to such forms of loss payable clauses as Grantee may approve and provide that no cancellation or reduction in coverage shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Irrespective of the insurance required and approved by Grantee hereunder, the security interest of Grantee hereunder shall cover all policies of insurance which insure against loss or damage of the Premises, and the proceeds from any and all such policies. Grantor shall also procure and maintain general comprehensive public liability insurance coverage with such companies, in such amounts and under such forms of policies as Grantee may approve, naming Grantee as an additional insured thereunder and providing that no cancellation or reduction in coverage thereunder shall be effective unless the insurer first gives Grantee thirty (30) days prior written notice. Forthwith upon the issuance of all such policies, Grantor shall deliver the same to Grantee together with evidence satisfactory to Grantee that the premiums have been paid. Within fifteen (15) days prior to the expiration date of each such policy, Grantor shall deliver to Grantee a renewal policy together with evidence satisfactory to Grantee that the premium therefor has been paid. In the event of a foreclosure and sale by Grantee of the Premises, the purchaser of the Premises shall succeed to all rights of Grantor in and to such policies, including the right to the refund of unearned premiums and to dividends thereunder, and Grantee may, at Grantee's election, assign and deliver the policies to such purchaser without any warranty or representation, express or implied, and without recourse. In the event of damage to or destruction of the Premises or any part thereof, Grantee may adjust, settle or compromise claims under such policies, and the proceeds therefrom shall be paid to Grantee. Grantee, at Grantee's option and in Grantee's sole discretion may either (i) apply the proceeds or any part thereof to payment of the Indebtedness, in such order as Grantee may determine, or (ii) require Grantor to repair, replace or construct the Premises or any part thereof and disburse the proceeds to Grantor to be applied against the costs and expenses thereof as incurred or paid by Grantor, pursuant to a disbursement procedure, and under such other terms and conditions, as shall be acceptable to Grantee.

1.08 Expenses. Grantor will pay or reimburse Grantee, upon demand therefor, for all attorney's fees, costs, and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Grantee is made a party or appears as party plaintiff or defendant, affecting or arising in connection with the Indebtedness secured hereby, this Deed, or the interest created herein, or the Property, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Property or any action to protect the security hereof; and any such amounts paid by Lender shall be added to the Indebtedness secured by the lien of this Security Deed.

**Exhibit E**

DEED BOOK:14840 PG:1399 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

1.09 Condemnation. If all or any portion of the Premises shall be damaged or taken through condemnation (which term when used in this Security Deed shall include any damage or taking by any governmental authority, quasi governmental authority, or by any party having the power of condemnation and any transfer by any private sale in lieu thereof), either temporarily or permanently, then the entire Indebtedness shall, at the option of Grantee, become immediately due and payable. Grantor shall notify clerk immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action for the taking through condemnation of the Premises or any part thereof. Notwithstanding any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of condemnation, Grantor shall continue to pay the Indebtedness. All sums paid or payable to Grantor by reason of any injury or damage to, or loss of, the Premises or any part thereof as a result of the exercise of the right of eminent domain shall be delivered to Grantee and Grantee, at Grantee's option and at Grantee's sole discretion, may either (i) apply the sum or any part thereof to payment of the Indebtedness, in such order as Grantee may determine, or (ii) require Grantor to repair, replace or construct the Premises or any part thereof and disburse such sums to Grantor to be applied against the cost and expenses thereof as incurred or paid by Grantor pursuant to a disbursement procedure, and under such other terms and conditions, as shall be acceptable to Grantee.

1.10 Limit of Validity. If from any circumstances whatsoever fulfillment of any provision of this Security Deed or of the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Security Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph 1.10 shall control every other provision of this Security Deed and of the Note.

1.11 Restriction on Transfer. Without the prior written consent of Grantee thereto (which consent may be granted or withheld at Grantee's sole and absolute discretion) and the recordation of such consent in the public deed records in the Office of the Clerk of the Superior Court of the County in which the Premises or any part thereof is located, prior to the cancellation, satisfaction and release by Grantee of this Security Deed, neither Grantor nor any party comprising Grantor shall sell, transfer, convey or assign all or any part of the legal or equitable title to the Premises, or any part of, or interest in, the Premises, other than a spouse may transfer to another spouse for estate planning purposes. Without limiting the generality of the foregoing, in addition to the transfer of the Premises by Grantor, and for purposes hereof, any change, transfer, or encumbrance of the legal or equitable ownership of any partnership interest, membership interest, or ownership interest in Grantor or any general partner of Grantor by the entities and/or individual or individuals who control and own Grantor which results in a loss of control or change of more than 50% ownership of Grantor shall constitute a transfer of the Premises for purposes of the Section. The foregoing proscription shall apply to any such sale, conveyance, transfer, assignment or exchange, whether made with or without consideration, and whether arising voluntarily or involuntarily, by reason of merger, consolidation or reorganization, by operation of law, or otherwise.

1.12 Subrogation. Grantee shall be subrogated to all right, title, equity, liens and claims of all persons to whom Grantee has paid or pays money in settlement of claims, liens, encumbrances or charges or in the acquisition of any right or title for Grantee's benefit under this Security Deed or for the benefit and account of Grantor. To the full extent of the Indebtedness, Grantee is hereby subrogated to the liens, claims and demands, and to the rights of the owners and holders of each and every claim, demand and other encumbrance on the Premises which is paid or satisfied, in whole or in part, out of the proceeds of the Indebtedness, and the respective liens, claims, demands and other encumbrances shall be, and each of them is hereby, preserved and shall pass to and be held by Grantee as additional collateral and further

DEED BOOK:14840 PG:1400 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

security for the Indebtedness, to the same extent they would have been preserved and would have been passed to and held by Lender, had they been duly and legally assigned, transferred, set over and delivered unto Lender by assignment, notwithstanding the fact that any instrument providing public notice of the same may be satisfied and cancelled of record.

1.13 Flood Insurance. Grantor represents and certifies to Grantee that no part of the Premises lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973, except for such part of the Premises as is shown on the plat of survey referred to in Exhibit "A" hereof. In the event Grantee determines that the rules or regulations of the Federal Reserve Board, the Comptroller of the Currency or any other governing agency licensing or regulating the operations of Grantee require that flood insurance coverage be obtained for the Premises or any part thereof in order for Grantee to comply with such rules or regulations or with the Flood Disaster Protection Act of 1973 as then in effect, then Grantor, upon receiving written notice from Grantee of such determination: (i) shall promptly purchase and pay the premiums for such flood insurance policies as Grantee deems required by such agency or agencies so that Grantee shall be deemed in compliance with the rules and regulations of such agency or agencies and with the Flood Disaster Protection Act of 1973 as then in effect; and (ii) shall deliver such policies to Grantee together with evidence satisfactory to Grantee that the premiums therefore have been paid. Such policies of flood insurance shall be in a form satisfactory to Grantee, shall name Grantee as an insured thereunder, shall provide that losses thereunder be payable to Grantee pursuant to such forms of loss payable clause as Grantee may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to the Premises under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancellable as to Grantee except upon thirty (30) days prior written notice given by the insurer to Grantee. Within fifteen (15) days prior to the expiration date of each such flood insurance policy, Grantor shall deliver to Grantee a renewal policy or endorsement together with evidence satisfactory to Grantee that the premium therefor has been paid.

1.14 Direct Payment of Proceeds from Casualty or Condemnation. Each insurance company, condemning authority or other party is hereby authorized and directed to make payment for all such claims and causes of action directly to Grantee, instead of to Grantor and Grantee jointly. In the event any insurance company, condemning authority or other party fails to disburse directly and solely to Grantee but disburses instead either solely to Grantor or to Grantor and Grantee jointly, Grantor agrees immediately to endorse and transfer such payments to Grantee. Upon the failure of Grantor to endorse and transfer such payments as aforesaid, Grantee may execute such endorsements or transfers for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as Grantor's agent and attorney-in-fact so to do. Grantee shall not be responsible for any failure to collect any insurance proceeds, any condemnation award or any other payment relating to the Premises, regardless of the cause of such failure.

## ARTICLE II
## EVENTS OF DEFAULT

Each of the following shall constitute events of default by Grantor hereunder:

2.01 Payment of Indebtedness. If Grantor should fail to pay the Indebtedness or any part thereof when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment or at a date fixed by reason of acceleration of the due date thereof or otherwise.

2.02 Other Payments and Terms. If Grantor should fail to make any payment (other than on the Indebtedness) required hereunder, or if Grantor should fail fully and completely to perform its duties and

**Exhibit E**

DEED BOOK:14840 PG:1401 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

obligations under, or should violate or breach or fail fully and completely to observe, satisfy or comply with any of the terms, covenants, conditions, agreements, requirements, restrictions or provisions set forth in, this Security Deed or any other instrument, document, agreement, letter or other writing between Grantor and Grantee or any subsidiary of Grantee or fail to perform any obligation of Grantor under any other agreement with any person if such failure may have a material and adverse effect on Grantor's business, whether executed concurrently herewith or in the future, including without limiting the generality of the foregoing, the Rent Assignment and the Note.

2.03 False Statements. If any certificate, representation, warranty, statement or other writing made herein or furnished to Grantee by or on behalf of Grantor contained herein or made in connection with any transaction which resulted in the Indebtedness or any part thereof should be false, untrue, incomplete or misleading in any respect as of the date made.

2.04 Seizure or Levy. If the Premises or any part thereof should be seized or levied upon or under legal process or a receiver should be appointed for the Premises or any part thereof.

2.05 Liens. If any Federal or State tax lien, or any claim of lien for labor or services performed or rendered or alleged to have been performed or rendered, or for materials supplied or furnished or alleged to have been supplied or furnished, or for architectural or engineering services performed or rendered or alleged to have been performed or rendered, in connection with the improvement of or with respect to the Premises, or any other type of lien should be filed of record against Grantor or the Premises and not be removed from record by payment or posting of bond within thirty (30) days from the date of such filing.

2.06 Priority Claim. If any claim of priority over this Security Deed should be asserted in any legal or equitable proceeding, and not be dismissed with prejudice within sixty (60) days after the filing thereof.

2.07 Insolvency or Bankruptcy. If Grantor becomes insolvent, or unable to pay debts as they mature or makes an assignment for the benefit of creditors; or if any action is brought by Grantor seeking his dissolution or liquidation of his assets or seeking the appointment of a trustee, interim trustee, receiver or other custodian for any of his property; or if Grantor commences a voluntary proceeding under the Federal Bankruptcy Code; or if any reorganization or arrangement proceeding is instituted by Grantor for the settlement, readjustment, composition or extension of any of his debts upon any terms; or if any action or petition is otherwise brought by Grantor seeking similar relief or alleging that he is insolvent or unable to pay his debts as they mature; or if any action is brought against Grantor seeking his dissolution or liquidation of any of his assets, or seeking the appointment of a trustee, interim trustee, receiver or other custodian for any of his property; or if any proceeding under the Federal Bankruptcy Code is instituted against Grantor and (i) an order for relief is entered in such proceeding or (ii) such proceeding is consented to or acquiesced in by Grantor; or if any action or petition is otherwise brought against Grantor seeking similar relief or alleging that he is insolvent, unable to pay his debts as they mature or generally not paying his debts as they become due.

2.08 Judgments. If any judgment should be rendered against Grantor and such judgment should not be paid in full and satisfied, or appealed from within the time allowed for appeals and be paid in full and satisfied when it becomes final.

2.09 Dissolution or Liquidation. Should Grantor, if a corporation or a limited liability company, be liquidated or dissolved or its articles of incorporation or organization expire or be revoked, or if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire.

**Exhibit E**

DEED BOOK:14840 PG:1402 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

2.10 Litigation. Should any suit shall be filed against Grantor or any guarantor of the Indebtedness which, in the judgment of Grantee, is not frivolous litigation and which, if adversely determined, could reasonably be expected substantially to impair the ability of Grantor or such guarantor to perform each and every one of their respective obligations under this Security Deed, the Note, and under any other document entered into in connection with the Indebtedness.

2.11 Miscellaneous. For the purposes of the events of default specified in sections 2.03, 2.05, 2.07, 2.08, 2.09, and 2.10 the word "Grantor" shall specifically include, without limitation: (i) any party comprising Grantor, should more than one person or entity execute this Security Deed as Grantor; (ii) Grantor and any person or entity now or hereafter liable, whether primarily, secondarily or contingently, for the payment of the Indebtedness or any part thereof including without limitation any principal owning at least 25% of Grantor, maker, endorser, guarantor or surety and the heirs, legal representatives, successors and assigns thereof; (iii) if Grantor or any party comprising Grantor be a general partnership or a limited partnership, any general partner thereof; and (iv) if Grantor or any party comprising Grantor be a joint venture, any joint venturer thereof.

## ARTICLE III
## REMEDIES AND POWER OF SALE

Upon the occurrence of an event of default, Grantor shall be in default hereunder. If Grantor shall be in default hereunder, Grantee may, at its option and election and without notice to Grantor, do any one or more of the following:

3.01 Acceleration of Indebtedness. Grantee may immediately declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment, demand, protest or notice of any kind, all of which are expressly waived by Grantor.

3.02 Entry and Possession. Grantee may enter upon the Premises or any part thereof and take possession thereof, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Premises or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Premises or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals and replacements; insure or keep the Premises insured; and carry out or enter into agreements of any kind with respect to the Premises.

3.03 Collection of Rents. Grantee may collect and receive all Rents, and apply the same to the Indebtedness, after deducting therefrom all costs, charges and expenses of taking, holding, managing and operating the Premises, including without limitation the reasonable fees and expenses of Grantee's attorneys and agents.

3.04 Payments. Grantee may pay any sum or sums deemed necessary or appropriate by Grantee to protect the Premises or any part thereof or Grantee's interest therein.

3.05 Other Remedies. Grantee may exercise all rights and remedies available in law or in equity, or contained in any other instrument, document, agreement or other writing now or hereafter evidencing or securing the Indebtedness or any part thereof, or heretofore, concurrently herewith or in the future executed by Grantor in favor of Grantee in connection with any transaction resulting in the Indebtedness or any part thereof, including, without limiting the generality of the foregoing, the Note and any loan agreement between Grantor and Grantee.

DEED BOOK:14840 PG:1403 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

3.06 Appointment of Receiver. Grantee may make application to any court and be entitled to the appointment of a receiver to take charge of the Premises or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Premises as security for the Indebtedness of any other matter usually incident to the appointment of a receiver.

3.07. Leases. Grantee, at its option, is authorized to foreclose the Security Deed subject to the rights of any tenants of the Property, and the failure to make any such tenants parties to any such foreclosure proceeding and to foreclose their rights will not be, nor be asserted to be by Grantor, a defense to any proceeding instituted by Grantee to collect the indebtedness.

3.08 Power of Sale. Grantee may sell the Premises, or any part or parcel thereof or any interest of Grantor therein separately, at Grantee's discretion, with or without taking possession thereof, at a public sale or public sales before the Courthouse door of the County in which the Premises or any part thereof is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale or sales by advertisement published once a week for four weeks (without any regard for the number of days between the date the first such notice is published and the date on which any such sale commences) in the newspaper in which advertisements of sheriff's sales are published in such county. Such advertisement so published shall be notice to Grantor, and Grantor hereby expressly waives all other notices. Grantee may bid and purchase at any such sale, and Grantee, as agent and attorney-in-fact for Grantor and in Grantor's name, may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Premises, or the part or parcel thereof or the interest therein which is sold. Grantee's conveyance may contain recitals as to the occurrence of any event of default under this Security Deed, and such recitals shall be presumptive evidence that all preliminary acts prerequisite to any such sale and conveyance were in all respects duly complied with. The recitals made by Grantee shall be binding and conclusive upon Grantor, and the sale and conveyance made by Grantee shall divest Grantor of all right, title, interest, and equity that Grantor may have or have had in, to and under the Premises, or the part or parcel thereof or the interest therein which is sold, and shall vest the same in the purchaser or purchasers at such sale or sales. Grantee may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Grantee as Grantor's agent and attorney-in-fact to make such sale or sales, to execute and deliver such conveyance or conveyances, and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Grantee as Grantor's agent and attorney-in-fact hereunder. Grantee's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by bankruptcy, insolvency, incompetency, death, dissolution or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Grantee hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith (including without limitation the fees and expenses of Grantee's attorneys in connection therewith), then to the payment of the balance of the Indebtedness, and the remainder, if any, shall be paid to Grantor or to the parties entitled thereto by law. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Grantee shall determine, at Grantee's option and in Grantee's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Premises, or the part thereof or interest therein sold, to the Purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

All of the foregoing rights and remedies are cumulative of and in addition to, and not restrictive of or in lieu of, any right or remedy provided for by statute, or now or hereafter existing at law or in equity. Grantee may, at Grantee's election and at Grantee's sole discretion, exercise each and every such right and remedy concurrently or separately or in any combination.

**Exhibit E**

DEED BOOK:14840 PG:1404 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

## ARTICLE IV
## ADDITIONAL PROVISIONS

The following terms and conditions shall constitute additional covenants and agreements by Grantor:

4.01 Intentionally deleted.

4.02 Commercial Transaction. The interest of Grantee under this Security Deed and the liability and obligation of Grantor for the payment of the Indebtedness arise from a "commercial transaction" within the meaning of O.C.G.A. §44-14-260(l). Accordingly, pursuant to O.C.G.A. §44-14-263, Grantor waives any and all rights which Grantor may have to notice prior to seizure by Grantee of any interest in personal property of Grantor which constitutes part of the Premises, whether such seizure is by writ of possession or otherwise.

4.03 Applicable Law. This agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of Georgia.

4.04 Forbearance. Grantee shall not be deemed to waive any of Grantee's rights or remedies under this Security Deed unless such waiver be expressed in writing and signed by or on behalf of Grantee. No delay, omission or forbearance by Grantee in exercising any of Grantee's rights or remedies shall operate as a waiver of such rights or remedies. A waiver in writing on one occasion shall not be construed as a waiver of any right or any remedy on any future occasion.

4.05 Time. Time is and shall be of the essence of this Security Deed and the covenants and agreements by Grantor.

4.06 Captions. Any captions or headings preceding the text of separate sections, paragraphs and subparagraphs hereof are solely for reference purposes and shall not affect the meaning, construction, interpretation or effect of the text.

4.07 Notices. All notices, requests, demands and other communications under this Security Deed or the Note or the Assignment of Leases and Rents, if any, shall be in writing and shall be deemed to have been duly given: (i) to Grantor when personally delivered to any office of Grantor, (iii) the next business day after deposited in overnight express delivery to the addresses of the parties set forth below by either Federal Express or by any national overnight delivery service and a delivery confirmation receipt is obtained, or (iv) two (2) days after deposited in the United States Mail, certified mail with return receipt requested and with all postage prepaid, addressed as follows:

(a) To Grantee: Southstate Bank, N.A.
1101 First Street South
Winter Haven, FL 33880

(b) To Grantor: Jane E. Hart
2101 Gaddis Road
Canton, GA 30115

Either party may, by written notice to the other, designate a different address for receiving notices hereunder; provided, however, that no change in Grantor's address for receiving notices hereunder shall be effective until Grantee has actually received notice thereof.

**Exhibit E**

DEED BOOK:14840 PG:1405 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

4.08 Severability. Wherever possible, each provision of this Security Deed shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Security Deed shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Security Deed.

4.09 Definitions. The word "Grantor" as used herein shall include the legal representatives, successors and assigns of Grantor as if so specified throughout this Security Deed, and all covenants, agreements, duties, obligations, liabilities and responsibilities of Grantor shall be binding upon and enforceable against the legal representatives, successors and assigns of Grantor. The word "Grantee" as used herein shall include the transferees, successors, and assigns of Grantee as if so specified throughout this Security Deed, and all rights of Grantee under this Security Deed shall inure to the benefit of the transferees, successors, and assigns of Grantee. The words "Grantor" and "Grantee" shall include the neuter, masculine and feminine genders, and the singular and the plural.

4.10 WAIVERS. GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE STATE OF GEORGIA OR THE CONSTITUTION OF THE UNITED STATES OF AMERICA TO NOTICE OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED TO GRANTEE BY THIS SECURITY DEED, AND WAIVES GRANTOR'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE UNDER POWER DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY DEED ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT PRIOR NOTICE OR JUDICIAL HEARING OR BOTH. GRANTOR FURTHER HEREBY EXPRESSLY WAIVES ALL HOMESTEAD EXEMPTION RIGHTS, IF ANY, WHICH GRANTOR MAY HAVE PURSUANT TO THE CONSTITUTION OF THE UNITED STATES, THE STATE OF GEORGIA OR ANY OTHER STATE OF THE UNITED STATES, IN AND TO THE PREMISES AS AGAINST THE COLLECTION OF THE INDEBTEDNESS, OR ANY PART THEREOF. ALL WAIVERS BY GRANTOR IN THIS PARAGRAPH HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY BY GRANTOR, AFTER GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO BE INFORMED BY COUNSEL OF GRANTOR'S CHOICE. GRANTOR'S EXECUTION OF THIS SECURITY DEED SHALL BE CONCLUSIVE EVIDENCE OF THE WAIVER AND THAT SUCH WAIVER HAS BEEN VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY MADE.

INITIALS

4.11 Hazardous Materials.

(a) Grantor represents, warrants and agrees that: (i) neither Grantor nor, to the best knowledge of Grantor, any other person has used or installed any Hazardous Material (as hereinafter defined) on, from or affecting the Premises or received any notice from any governmental agency, entity or other person with regard to Hazardous Materials on, from or affecting the Premises; (ii) neither Grantor, to the best knowledge of Grantor, nor any other person has violated any applicable Environmental Laws (as hereinafter defined) affecting the Premises; (iii) the Premises are presently in compliance with all Environmental Laws, and there are no facts or circumstances presently existing upon or under the Premises, or relating to the Premises, which may violate any applicable Environmental Laws, and there is not now pending or, to the best knowledge of the Grantor, threatened any action, suit, investigation or proceeding against Grantor or the Premises (or against any other party relating to the Premises) seeking to enforce any right or remedy under any of the Environmental Laws; (iv) the Premises shall be kept free of Hazardous Materials, and shall not be used to generate, manufacture, refine, transport, treat, store, handle, dispose of, transfer, produce, or process Hazardous Materials; (v) Grantor

DEED BOOK:14840 PG:1406 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

shall not cause or permit the installation of Hazardous Materials in, on, over or under the Premises or a Release (hereinafter defined) of Hazardous Materials onto or from the Premises or suffer the presence of Hazardous Materials in, on, over or under the Premises; (vi) Grantor shall comply with, and ensure compliance by all other parties with, all applicable Environmental Laws relating to or affecting the Premises, and Grantor shall keep the Premises free and clear of any liens imposed pursuant to any applicable Environmental Laws, all at Grantor's sole cost and expense; (vii) there has been no Release of any Hazardous Materials on or from the Premises, whether or not such Release emanated from the Premises or any contiguous real estate; and (viii) Grantor shall immediately give Grantee oral and written notice in the event that Grantor receives any notice from any governmental agency, entity, or any other party with regard to Hazardous Materials on, from or affecting the Premises and Grantor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial, removal, and other actions necessary to clean up and remove all Hazardous Materials on, from or affecting the Premises in accordance with all applicable Environmental Laws.

(b) Grantor hereby agrees to indemnify Grantee and hold Grantee harmless from and against any and all liens, demands, actions, suits, proceedings, disbursements, liabilities, losses, litigation, damages, judgments, obligations, penalties, injuries, costs, expenses (including, without limitation, attorneys' and experts' fees) and claims of any and every kind whatsoever paid, incurred, suffered by, or asserted against Grantee and/or the Premises for, with respect to, or as a direct or indirect result of the following: (i) the presence in, on, over or under, or the escape, seepage, leakage, spillage, discharge, emission or Release on or from, the Premises of any Hazardous Materials; (ii) the violation of any Environmental Laws relating to or affecting the Premises or Grantor; (iii) the failure by Grantor to comply fully with the terms and provisions of Paragraph 4.11(a); (iv) the violation of any of the Environmental Laws in connection with any other property owned by Grantor, which violation gives or may give rise to any rights whatsoever in any party with respect to the Premises by virtue of any of the Environmental Laws; or (v) any warranty or representation made by Grantor in Paragraph 4.11(a) is or becomes false or untrue in any material respect.

(c) In the event Grantee suspects Grantor has violated any of the covenants, warranties, or representations contained in Paragraph 4.11(a), or that the Premises are not in compliance with the Environmental Laws for any reason, or that the Premises are not free of Hazardous Materials for any reason, Grantor shall take such steps as Grantee requires by written notice to Grantor in order to confirm or deny such occurrences, including, without limitation, the preparation of environmental studies, surveys or reports. In the event that Grantor fails to take such action, Grantee may take such action as Grantee deems necessary, and the cost and expenses of all such actions taken by Grantee, including, without limitation, Grantee's attorney's fees, shall be added to the Indebtedness evidenced by the Note.

(d) For purposes of this Security Deed: (i) "Hazardous Material" or "Hazardous Materials" means and includes petroleum products, flammable explosives, radioactive materials, asbestos or any material containing asbestos, polychlorinated biphenyls, and/or any hazardous, toxic or dangerous waste, substance or material defined as such or defined as a Hazardous Substance or any similar term, by, in or for the purposes of the Environmental Laws, including, without limitation section 101(14) of CERCLA (hereinafter defined); (ii) "Release" shall have the meaning given such term, or any similar term, in the Environmental Laws, including, without limitation Section 101(22) of CERCLA; and (iii) "Environmental Law" or "Environmental Laws" shall mean any "Super Fund" or "Super Lien" laws, or any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree, regulating, relating to or imposing liability or standards of conduct concerning any Hazardous Materials as may now or at any time hereafter be in effect, including, without limitation, the following, as same may be amended or replaced from time to time, and all regulations promulgated thereunder or in connection therewith: the Super Fund Amendments and Reauthorization Act of 1986 ("SARA"); the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"); The Clean Air Act

DEED BOOK:14840 PG:1407 Filed: 12/06/2022 10:35 AM Clerk File Number: 28-2022-044760
Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 7783273494

("CAA"); the Clean Water Act ("CWA"); The Toxic Substances Control Act ("TSCA"); The Solid Waste Disposal Act ("SWDA"), as amended by the Resource Conservation and Recovery Act ("RCRA"); the Hazardous Waste Management System; and the Occupational Safety and Health Act of 1970 ("OSHA"). The obligations and liabilities of Grantor hereunder shall survive the exercise of power of sale under or foreclosure of this Security Deed, the delivery of a deed in lieu of foreclosure, the cancellation or release of record of this Security Deed, and/or the payment and cancellation of the Note secured by this Security Deed.

4.12 Federal Law

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

i) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

ii) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**DEED BOOK:14840 PG:1408 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760**
**Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00**
**Patty Baker, Clerk of Superior Court - Cherokee County, GA**
**ParticipantIDs: 7783273494**

**IN WITNESS WHEREOF,** Grantor has caused this indenture to be executed and sealed and to be delivered to Grantee, on the day and year first written above.

Signed, sealed, and delivered in the presence of:

______________________________
Witness

Kay Covey
______________________________
Notary Public

My commission expires: 03/20/2025

[NOTARIAL SEAL]

KAY COVEY
NOTARY
EXPIRES
GEORGIA
March 20, 2025
PUBLIC
CHEROKEE COUNTY

**GRANTOR:**

Jane E Hart
______________________________(SEAL)
Jane E. Hart

**Exhibit E**

**DEED BOOK:14840 PG:1409 Filed: 12/06/2022 11:35 AM Clerk File Number: 28-2022-044760**
**Rec: $25.00 Intangible Tax: $0.00 Penalty: $0.00 Interest: $0.00**
**Patty Baker, Clerk of Superior Court - Cherokee County, GA**
**ParticipantIDs: 7783273494**

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 1138 of the 3rd District, 2nd Section of Cherokee County, Georgia and being Lot 62, Woodmont, Unit 1B, as per plat thereof recorded at Plat Book 88, Pages 89-91, Cherokee County, Georgia records, which plat is by reference incorporated and made a part hereof.

Also being known as 2101 Gaddis Road, Canton, Georgia 30115.

**Exhibit E**

DEED BOOK:14838 PG:618 Filed: 11/22/2022 11:13 AM Clerk File Number: 28-2022-043657
Rec: $25.00 TRANSFER TAX $836.60
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: 1814025648

Adair & Baker, LLC
2475 Northwinds Parkway
Suite 150
Alpharetta, GA 30009
Attn: John Adair / ALP-221093

**WARRANTY DEED**

**STATE OF GEORGIA** **COUNTY OF FULTON**

THIS INDENTURE, Made the 18th day of November, 2022, between

**Pulte Home Company, LLC, a Michigan limited liability company, an entity legally converted from Pulte Home Corporation, A Michigan Corporation**

of the County of Fulton, and State of Georgia, as party or parties of the first part, hereinafter called Grantor, and

**Thomas Hart and Jane E. Hart as joint tenants with right of survivorship**

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH: That Grantor, for and in consideration of the sum of TEN DOLLARS and other good and valuable considerations---($10.00) in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

**All that tract or parcel of land lying and being in Land Lot 1138 of the 3rd District, 2nd Section of Cherokee County, Georgia, and being Lot 62, Woodmont, Unit 1B, as per plat thereof recorded at Plat Book 88, Pages 89-91, Cherokee County, Georgia records, which plat is by reference incorporated and made a part hereof.**

This conveyance is made subject to all covenants, easements and restrictions of record.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this deed, the day and year above written.

Signed, sealed and delivered
in the presence of:

PULTE HOME COMPANY, LLC
CORPORATE SEAL
MICHIGAN

(Unofficial Witness)

Notary Public

BRITTANY VICEROY
My Commission Expires
NOTARY PUBLIC
11-18-2024
CHEROKEE COUNTY, GEORGIA

**Pulte Home Company, LLC, a Michigan limited liability company, f/k/a Pulte Home Corporation**

**By:** ______________________(Seal)
Closing Coordinator Nia Shabazz

**Exhibit F**

Superior Court of Cherokee County
**E-Filed**
25CVE0073
5/5/2025 11:24 AM KH
Patty Baker, Clerk
Civil Division

**IN THE SUPERIOR COURT OF CHEROKEE COUNTY
STATE OF GEORGIA**

| | | |
|---|---|---|
| SOUTHSTATE BANK, N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>PIZZA BAKERS ON PONCE, INC., a Georgia corporation, and THOMAS D. HART, an individual, and JANE E. HART, an individual,<br><br>Defendants. | ) | CIVIL ACTION FILE NO:<br><br>25CVE0073 |

**[~~PROPOSED~~] ORDER GRANTING MOTION FOR DEFAULT AND FINAL JUDGMENT**

Before the Court is Plaintiff's Motion for Default and Final Judgment (the "Motion"). On May 5, 2025, the Court held a hearing on damages. Based on the argument presented, the Court, having reviewed the pleadings and all exhibits thereto, the Motion, the Affidavits and all exhibits thereto, and otherwise being duly advised on the premises, orders as follows:

Because Defendants have neither answered nor otherwise responded to Plaintiff's Complaint within the time periods provided by O.C.G.A. §§ 9-11-12 and 9-11-55, the Court finds that Defendants are in default and that Plaintiff is entitled to final judgment against Defendants, jointly and severally, for all amounts due under the relevant loan documents, totaling **$1,098,740.40**, which includes a principal balance of $945,233.73, accrued and unpaid interest of $126,949.85 (which may not include all default interest, and which continues to accrue at a rate of $262.56 per diem), late fees in the amount of $7,310.49, and attorney's fees and litigation costs in the amount of $19,246.33.



81221073;1

**Exhibit G**

**SO ORDERED** this 5th day of May, 2025.

The Honorable Shannon Wallace
Judge, Cherokee County Superior Court

Presented and Prepared by:

Brittanie Browning
Georgia Bar No. 208410
*Attorney for the Plaintiff*



**Exhibit G**